CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. EMAN J. SPIRK ET AL.

FILED APRIL 21, 1897. No. 7069.

1. **Pleading. MOTION TO STRIKE OUT OBJECTIONAL STATEMENTS.** A motion to strike matter out of a pleading should refer specifically to the alleged objectionable statement. If the motion includes

matter which is pertinent with that which is objected to as impertinent, and they might have been separated, the motion must be overruled.

2. ——: OBJECTION TO PETITION. Where the objection to a petition, that it does not state a cause of action, is not interposed until after the commencement of the trial of the case, the pleading will be liberally construed and if possible sustained.

3. ——: ACTION FOR EJECTING PASSENGERS FROM TRAIN. The petitions, in the cases at bar *held* to state causes of action.

4. Review: EVIDENCE. Findings of a jury made on consideration of conflicting evidence will not be disturbed if there is sufficient evidence in their support.

5. Carriers: WRONGFUL EJECTION OF PASSENGERS: REMEDIES. Parties rightfully on a railroad train by virtue of a contract for their carriage to an agreed destination, and who are wrongfully ejected before the journey is completed, may sue for a breach of the contract, or in an action *ex delicto* for tort or negligence of the carrier.

6. Breach of Contract: MEASURE OF DAMAGES. If for a breach of the contract, the measure of the damages will be such as may fairly be considered as arising naturally, or in the usual course of things from the breach, or such as may reasonably be supposed to have been in contemplation of the parties to the contract when it was made, as the probable results of its breach. (*Hadley v. Baxendale*, 9 Exch. [Eng.], 341.)

7. Torts: NEGLIGENCE: MEASURE OF DAMAGES. If for the tort or negligence, the measure of damages will be compensation for all injuries which are directly caused or flow from the wrongful act or acts.

8. Carriers: WRONGFUL EJECTION OF PASSENGERS. *Held*, That the evidence in these cases sustains findings that the defendants in error were as passengers in a car and on a train which did not stop at the station, their purposed destination, to which the tickets they had purchased entitled them to be carried; that they were not so situated by reason of their own negligence but the negligence of the company or its employes.

9. ——: ——: MEASURE OF DAMAGES. Where passengers on a railroad train which does not stop at the station to which their tickets entitled them to be carried, and their being so situated is not the result of their own negligence but that of the company or its employes, were ejected from the train by the conductor and other employes of the company in obedience to a rule of the company for the guidance of the conductor in such cases, at a station other than the one to which they were to be carried, the company is liable in an action *ex delicto* for all damages which result or flow directly from the negligence,

Chicago, B. & Q. R. Co. v. Spirk.

10. ——: ——: ——: REVIEW. Whether the negligence is the proximate cause of injuries is ordinarily a question of fact for the jury, but if its finding in that regard is manifestly wrong it will be set aside.

11. ——: ——: ——. Some of the injuries alleged in this case,— incidents of a trip across the prairie,—*held*, not to directly result or flow from the negligence or wrongful acts of the plaintiff in error, and hence not to be within the measure of damages applicable here.

ERROR from the district court of Saline county. Tried below before HASTINGS, J. *Reversed.*

The opinion contains a statement of the case.

*J. W. Deweese* and *F. I. Foss*, for plaintiff in error:

The petition nowhere alleges that the plaintiffs took passage on a train that was scheduled to stop at the station of Haigler, to which point they held tickets. Nor does it allege that the train on which they took passage would or should stop at said station under any rule or regulation of the railroad company. The petitions were therefore defective. (*Ohio & M. R. Co. v. Hatton*, 60 Ind., 15; *Pittsburg, C. & St. L. R. Co. v. Nuzum*, 50 Ind, 141; *Ohio & M. R. Co. v. Applewhite*, 52 Ind., 540; *White v. Evansville R. Co.*, 33 N. E. Rep. [Ind.], 275; *Chicago & St. L. R. Co. v. Bills*, 104 Ind., 17.)

It was the duty of the plaintiffs to inform themselves by proper investigation and inquiry whether the train on which they took passage would stop at the station of their destination. The railroad company had a right to regulate the running of its trains, arranging for the through fast trains to make only certain stops, and for other trains to run as local trains and make all the stops. It was the duty of the plaintiffs under the law to get off at some station before reaching Haigler where the train did stop, after being notified by the conductor that it would not stop at Haigler; or they might properly pay their fare from Haigler west to the next station at which the train did stop, and stay on the train to such station,

(*Chicago & A. R. Co. v. Randolph*, 53 Ill., 515; *Texas R. Co. v. Ludlam*, 57 Fed. Rep., 484; *Beauchamp v. I. & G. N. R. Co.*, 56 Tex., 239; *Lake Shore & M. S. R. Co. v. Pierce*, 47 Mich., 277; *Platt v. Chicago & N. W. R. Co.*, 21 Am. & Eng. R. Cas. [Wis.], 319; *Duling v. Philadelphia, W. & B. R. Co.*, 6 Atl. Rep. [Md.], 592; *Pittsburgh R. Co. v. Lightcap*, 34 N. E. Rep. [Ind.], 243; *Texas P. R. Co. v. White*, 17 S. W. Rep. [Tex.], 419; *Deitrich v. Pennsylvania R. Co.*, 71 Pa. St., 433; *Chicago & E. R. Co. v. Field*, 34 N. E. Rep. [Ind.], 407; *Sira v. Wabash R. Co.*, 21 S. W. Rep. [Mo.], 906; *Pittsburgh R. Co. v. Klitch*, 37 N. E. Rep. [Ind.], 560; *Galveston, H. & S. A. R. Co. v. Kimebrew*, 27 S. W. Rep. [Tex.], 631; *Church v. Chicago, M. & St. P. R. Co.*, 60 N. W. Rep. [S. Dak.], 854.)

When the plaintiffs were notified that they were on the wrong train, and refused to get off when directed so to do by the conductor, they became trespassers and their forcible ejectment at Benkleman was rightful. (*Atchison, T. & S. F. R. Co. v. Gants*, 17 Pac. Rep. [Kan.], 60; *Galbraith v. Flemming*, 27 N. W. Rep. [Mich.], 581; *Peabody v. Oregon R. & N. Co.*, 26 Pac. Rep. [Ore.], 1053; *Mahoney v. Detroit City R. Co.*, 52 Am. & Eng. R. Cas. [Mich.], 581; *Chicago, St. L. & P. R. Co. v. Bills*, 104 Ind., 15; *Townsend v. New York C. & H. R. R. Co.*, 56 N. Y., 301.)

Plaintiffs sought to recover damages and expenses sustained and incurred in going into the country after they were ejected. Such damages are too remote and contingent and do not in any manner relate to the contract made with the railroad company nor were they the proximate results of the alleged violation of the company's contract. (*Sira v. Wabash R. Co.*, 21 S. W. Rep. [Mo.], 905; *Selleck v. Lake S. & M. S. R. Co.*, 23 Am. & Eng. R. Cas. [Mich.], 340; *Lewis v. Flint & P. M. R. Co.*, 54 Mich., 55; *McLary v. Sioux City & P. R. Co.*, 3 Neb., 53; *City of Crete v. Childs*, 11 Neb., 253.)

*Webster, Rose & Fisherdick* and *J. H. Grimm, contra:*

There was no prejudicial error in overruling the motion to strike from the petition the language attacked. (*Bulli-*

*more & O. R. Co. v. Bambrey*, 16 Atl. Rep. [Pa.], 67; *Head v. Georgia P. R. Co.*, 79 Ga., 359.)

The plaintiff had a right to assume that all of defendant's agents understood their duties and would perform them; and if he performed his he could stand upon his contract, and upon his relation as passenger, which the contract generated. (*Alabama G. S. R. Co. v. Heddleston*, 3 So. Rep. [Ala.], 53; *South & N. A. R. Co. v. Huffman*, 76 Ala., 496.)

A passenger wrongfully evicted from a train does not forfeit his right of action against the road for his injuries merely by reason of having insisted, however strenuously, on his right to passage, and by having resisted the assailant who wrongfully expelled him. (*Louisville, N. A. & C. R. Co. v. Wolfe*, 27 N. E. Rep. [Ind.], 606; *St. Louis, A. T. R. Co. v. Mackie*, 9 S. W. Rep. [Tex.], 451; *Shepard v. Chicago, R. I. & P. R. Co.*, 41 N. W. Rep. [Ia.], 564; *Baltimore & O. R. Co. v. Bambrey*, 16 Atl. Rep. [Pa.], 67; *Chicago, St. L. & P. R. Co. v. Bills*, 20 N. E. Rep. [Ind.], 775; *Sternberg v. State*, 36 Neb., 307.)

HARRISON, J.

John and Eman Spirk commenced separate actions against the Chicago, Burlington & Quincy Railroad Company to recover damages alleged to have accrued in their favor on account of their unlawful and wrongful expulsion, prior to arrival at their destination, from one of the trains of the company, upon which they were passengers. The alleged causes of action had their origin in the same state of facts; hence after issues joined the causes were, on motion presented therefor, consolidated, the evidence introduced but once and the one jury returned a verdict thereon in each case favorable to plaintiffs. The company has prosecuted error proceedings to this court.

Before answer there was a motion interposed in behalf of the company, in each case, to strike out of the petitions certain portions thereof quoted in the motion. The refusal of the trial court to act in accordance with these

motions is the subject of one assignment of error.   If the matter sought to be stricken out of the pleadings contained anything immaterial, which we need not now decide, if it also contained any material averment or averments, which it clearly did, it was proper to overrule the motions, and there was no error in so doing.   There was no prejudicial or available error in the overruling of the motions to strike out disclosed by the record presented to this court.

After the issues had been joined and the cases called for trial, at the inception of the introduction of evidence on behalf of defendants in error, counsel for the plaintiff in error objected to the reception of any evidence, on the ground that the facts stated in the petitions were insufficient to constitute a cause of action.   This was overruled; and the action of the court in this regard is assigned and urged as error.   Where, as in this case, the objection to the sufficiency of a petition, that it does not state a cause of action, is not interposed until on the trial, the pleading will be liberally construed, and if possible sustained.   (*Roberts v. Taylor*, 19 Neb., 184.)   Read and interpreted in accordance with the foregoing rule, the petitions herein were sufficient and not open to the criticism urged against them, viz., that it did not appear that defendants in error were at the time rightfully on the train from which they alleged they were ejected.   The petitions disclosed that the defendants in error purchased tickets, which entitled them to a safe passage on or over plaintiff in error's road from a named starting point to a designated destination, and that they became passengers on said railroad accordingly, and took seats in the cars of plaintiff in error, to be carried to their journey's end, and were carried directly toward their destination until a station called Benkleman, on the line of road, was reached, where they were unlawfully and forcibly ejected from the train or car in which they were riding.   The foregoing is, in substance and in short, a statement of the portions of the pleadings attacked, and the averments were, we think,

sufficient to show a cause of action in favor of the parties seeking redress for alleged wrongs.

The evidence discloses that the defendants in error were citizens and residents of Wilber, in Saline county, this state, that at the time of the trip, of which some of the incidents and circumstances form the basis of these suits, certain matters of business rendered it necessary that they go to Haigler, a station on the line of road of the company, plaintiff in error, to be there met by some-one, and be taken from there twenty-five or thirty miles across the prairie to meet a party or parties, with whom defendants in error had certain affairs to transact, or with whom they were to consult. The brothers called, according to the evidence of the company's agent at Wilber, on him, separately, a short time prior to the projected travel, and made certain inquiries in regard to the arrangement of the running of the trains by which they could reach their desired destination, and were furnished with the information. On Saturday, June 10, 1893, they boarded a train of plaintiff in error at Wilber, paying their fare to Wymore to the conductor on the train; at the last men-tioned station they purchased tickets which entitled them respectively to a continuous passage to Haigler, and en-tered the train which was then standing at Wymore, and which was the proper one for the portion of their journey, between Wymore and Oxford Junction, and it contained a chair car and a "Pullman," which were destined to run through to Denver, Colorado, the other cars of this train going no farther than the junction at Oxford. The Pull-man and chair car, to which we have just referred, were to be and were attached to a "local" train which passed through Oxford Junction on its run from Chicago to Den-ver, and hauled by the local westward as far as McCook, where they were to be and were detached from the local and attached to another train, a through passenger train running between Chicago and Denver, to be taken to the latter place. This was known as the fast train, or flyer, and made but a few stops at any of the stations along the

route. The defendants in error were, at or prior to the arrival of the train on which they were passengers, at Oxford Junction, notified to change from the coach in which they were seated to the one in its rear, relatively to the position of the cars considered from the engine or forward end of the train, and they did so. Though there is some conflict as to this particular fact, we must conclude that the parties were so notified, and made the requested change, as this must have been of the findings of the jury and had ample support in the evidence; and further, it is borne out by the conditions then existing in regard to the cars in the train, and the proper one for them to be in, if they expected to go farther west from Oxford Junction, as this rear chair car which they were told to, and did go into and take seats, was the only one of that train, other than the Pullman, for passengers, which was to proceed farther west toward Denver from Oxford Junction. The chair car and Pullman were attached to the local train for Denver, and hauled by it to McCook, where they were detached, and taken up by the through or fast train, and became a part of it during the balance of the run to Denver. A porter who was on duty on the local train on this day, and in the chair car which had been taken into the train at Oxford Junction, while it was part of such train, to-wit, between Oxford Junction and McCook, was examined as a witness, and stated that it was of his duties to notify all passengers who were in the chair car, which had been attached at Oxford Junction, and who were going to stations beyond McCook and intermediate points between there and Denver, to change from that coach to the one in front of it, which would continue to be part of the local train after it should have passed McCook; that he saw the defendants in error in the through chair car, and after ascertaining their destination to be Haigler, told them two or three times to go forward into the local coach, in order that they might be served as their tickets required. That they were thus notified, or in any other manner, or that they had or gained in any manner, any information of the

fact that it was necessary they should leave for another car than that into which they had gone as ordered at or prior to arrival at Oxford the defendants in error strenuously denied.  As to this point there was evidence corroborative of that of the porter, but it is manifest that the jury must have determined it in favor of defendants in error, and while we are not satisfied that we should have agreed to such a conclusion in the first instance, as there was sufficient evidence in support of the finding, it will not be disturbed.

On the particular date of the events which are of the subject-matters of this case the through or fast Denver train was, to use a general expression, behind time, and did not reach McCook until later than it was scheduled to be there, and the local train left McCook prior to and ahead of the through train, and continued in advance of it, so far as we are informed by the evidence herein of the relative movements of the two trains.  The conductor who took charge of the "flyer" train at McCook went through the cars and made, as is usual, an examination and disposition of the tickets of the passengers, and discovered the defendants in error and that they had tickets for Haigler as their stopping place, and immediately informed them that the train was not scheduled to stop there and would not; that they must leave the train at Benkleman, the last and nearest station east of Haigler at which the train would halt, or that they could remain on until it reached a station in Colorado, beyond or west of Haigler, where the train would stop, the last conditional upon the payment of the fare from Haigler to the station beyond.  They refused either alternative and demanded that the train be stopped at Haigler and they be allowed to leave it; but this last they were informed could not be.  When the train reached Benkleman a stop was made, and the conductor informed the defendants in error that he could not halt the train at Haigler, that they must get off where they then were or pay the fare from Haigler to the station beyond, at which the train

was scheduled to and would stop.  The defendants in error refused to do either, and finally, after some parleying without any effectual results, the conductor, helped by other employes of the company, put the defendants in error out of the car and off the train.  One of them (they were brothers), who was at the time sick and nervous, made little or no resistance.  He says that the conductor "grabbed hold of me before I had a chance to take a second breath, and simply shoved me out.  I was in poor health at the time and walked out.  He had no trouble with me; he simply shoved me out on the platform and then went back and started on my brother."  The conductor testified on this subject: "He said he would not get off, that I would have to force him off; this John Spirk told me that I would have to force him off, so I took hold of him and he walked out and did not make any resistance.  He went out quietly until he got to the platform of the car, in the vestibule, and then he said he would not get off without his brother.  I left him then and went back and got hold of his brother, and he resisted with all his might."  The other brother, as the conductor says, resisted to the extent, seemingly, of his ability, but was finally ejected.  The train went on its way and the brothers were left in Benkleman.  This happened at between 1 and 2 o'clock on Sunday morning. The brothers went to a hotel in Benkleman, where they remained until about 1 o'clock P. M. of Sunday, when, having in the meantime secured a driver and livery team, they started and drove across the prairie forty or fifty miles to the land, their intended ultimate destination, which they had purposed reaching by way of Haigler. They arrived about 9 o'clock of Monday morning, having been forced, after driving until 11 o'clock at night, to camp and sleep, or attempt to, during the remainder of the night on the prairie.

Counsel for the company, in arguments in relation to the measure of damages which should have been adopted, and in the enforcement of their complaint that the proper

rule in this particular was violated in the trial court, treat the action as predicated on a breach of the contractual rights of the defendants in error, created by the sales of the tickets to them by the company's agent. There are allegations contained in the petitions which tend to support this position, but the petitions when read and construed as a whole, we think, state a cause of action sounding in the negligence or tort of the company, committed by or through its agents or employes. In the petitions the purchases of the tickets are alleged, and the consequent ensuing rights of the purchasers to be carried to Haigler; but these things and others are pleaded to show the inception and establishment of the positions of the parties to the action at the time of the occurrences which gave the rights of action, and not to show the contracts for carriage to Haigler and their breaches. The defendants in error had the right, no doubt, to elect to sue the company for breaches of its contracts to carry them to Haigler; or for the torts, the ejections from the train, and we are led to conclude, from the pleadings and evidence, that they chose the latter. It is necessary that this distinction be made, emphasized, and borne in mind, as the rules to be enforced on the subject of the damages allowable differ very materially. If the cases are to recover for breaches of contracts, then the rule would be: "Where two parties have made a contract, which one of them has broken, the damages which the other ought to receive in respect to such breach of contract should be either such as may fairly and substantially be considered as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." (*Hadley v. Baxendale*, 9 Exch. [Eng.], 341; *Candee v. Western Union Telegraph Co.*, 34 Wis., 479.) In actions for torts, as a general rule, there is a liability for all injuries which directly flow or result from the wrongful act or acts of

16

the wrong-doer, regardless of whether they might or might not have been foreseen or contemplated by him as probable to follow or flow from the doing of the act or acts. (*Vosburg v. Putney*, 80 Wis., 523; *Brown v. Chicago, M. & St. P. R. Co.*, 11 N. W. Rep. [Wis.], 356.)

It is urged on behalf of the plaintiff in error that it devolves on a prospective passenger to inform himself whether the train on which he proposes to take passage will stop at the station to which he is bound, and that it was the duty of defendants in error to ascertain and know whether they were aboard of the right train. Be this rule as it may, it could have no application here. These parties took the right train and proceeded on their journey until they were directed, and properly so, by the employe of the company whose duty it was to give such order, to go into a designated car of the train, which they accordingly did, and there they remained, having, as the jury determined, received no other or further orders in regard to changing to another car, though it was of the duties of an employe, who testified and so stated, to, at a subsequent stage of their trip, inform them of a necessary change to a car which would be of the local train, which would stop at their destination. In view of these and facts of similar import, it must be said that the defendants in error were in the through or wrong car by direction or negligence of the company, and not of their own volition or want of care; hence, whatever subsequently happened to them by reason of their being in the wrong car was not of their blame; but the direct consequences, if injurious to them, must be borne or compensated by the blamable one, the company. It is said that a railroad company may make and enforce all reasonable rules and regulations for the operation of the road, including the running of trains, and that certain of them shall not stop except at such and so many of the stations on the line of road as may be designated by the company. It is also said that it was of the rules of the plaintiff in error, in force at the date herein involved, that the through

train to Denver should not stop at Haigler, and that the conductor was in duty bound to observe this.   Conceding the rule by way of argument, and it was proven that the train was scheduled to run without stopping at Haigler, then the conductor had no choice but to insist that the defendants in error leave the car at Benkleman, or be carried to the first scheduled stopping station beyond Haigler, and pay their fare from Haigler to the place beyond; and when they refused, to order them out at Benkleman, and if they did not go, to put them off the train, using only such force as was absolutely or reasonably necessary to effect the purpose; but, notwithstanding the conductor might so do, it did not relieve the company of its liability to answer to any resulting damages.   As we have seen, it was to blame for their being in the wrong car, and subject to its rule in regard to the running of the through train; hence, any damages directly resulting from the enforcement of the rule became its liabilities.

By objections to certain of the paragraphs of the charge to the jury, and the offer of an instruction with a request that it be given, which was refused, to all of which exceptions were noted, and the actions of the trial court in regard to which were duly assigned for error, the question was raised that the alleged journey of forty or fifty miles across the prairie, and the consequent exposure to inclement weather and other inconveniences and hardships, should not have been submitted to the consideration of the jury as proper elements of damages. Undoubtedly, under the rule for the measurement of damages in actions of the nature of which we have determined these to be (*ex delicto*),—(for rule see 1 Sedgwick, Measure of Damages, 130, note),—it was competent to prove the trip out into the country, with its concomitant circumstances, if it and they were further shown to be necessarily and directly traceable to the ejection from the train, and directly consequent therefrom (*Vosburgh v. Putney, supra; Brown v. Chicago, M. & St. P. R. Co., supra*); and whether the ejection of the defendants in

error from the train was the proximate or direct cause, or directly produced the trip, and any damages arising therefrom, was, as it is ordinarily, a question of fact for the jury (*Milwaukee & St. P. R. Co. v. Kellog*, 94 U. S., 469; *Patten v. Chicago & N. W. R. Co.*, 32 Wis., 524); but where the finding of the jury as to the proximate cause of an injury is manifestly wrong it will be set aside. The facts in the case at bar in relation to the trip made across the prairie and its attendant circumstances were undisputed. The defendants in error were left in Benkleman at about half past one o'clock on Sunday morning, and ascertained before going to the hotel, or early in the day (just which is not clear from the evidence), that there would not be a train that would pass through Benkleman by which they could reach Haigler until at some time that night; they waited in Benkleman until 1 o'clock in the afternoon of Sunday and then started with horses and vehicle, not to Haigler, where they were due and were to have and should have been carried by the company, and had arranged to be met by some person, who was to take them out some twenty-four or twenty-six miles from there to a piece of land which they desired, and it was the purpose of their trip, to inspect,—but across the prairie some forty-five or fifty miles, in a direction where there were but a few settlers and for a considerable portion of the distance no road, or but a poorly defined one. As a consequence of their late start for a journey of such length in the manner they made it, night came on before they had completed the trip, and they lost their way and were compelled to spend the night on the prairie, with nothing to sleep on or under except the buggy cushions and lap-robes, which they utilized for such purposes. We have no doubt that if it had been necessary for them to reach Haigler the night they were put off the train at Benkleman, and pursuant to such necessity, and to attain their purpose, they had immediately continued their journey and accomplished it, that all injuries or damages springing or resulting directly from the trip from Benkleman

to Haigler would have been recoverable; or had it been shown that it became necessary, in order to meet a business engagement or purpose at the land (to reach which was the ultimate design of the whole journey), to go direct from Benkleman to the land, and that this necessity had been immediately or reasonably attempted, the attendant directly resulting damages might have been assessable herein; but for the parties to wait until more than half of the succeeding day's light had expired and then start to travel the distance, and with existent conditions, such as in the natural course of events would almost necessarily cause a part of the trip to extend into the late evening or night, the consequent exposure and hardships do not come within injuries proximately or directly flowing as consequences from the wrong of the company. Had there been evidence that the trip from Benkleman to the land was unavoidably necessary and must be made on that day, and that the start was delayed until late in the day for some sufficient reason, then it might still have been proper to submit the question to the jury; but there was no such evidence, and we are forced to the conclusion that on the undisputed facts in respect to this trip from Benkleman to the land, the incidental exposure and hardships, and resulting injuries to the defendants in error, were not within the proper measure of the damages in the cases at bar. (*Indianapolis, B. & W. R. Co. v. Birney*, 71 Ill., 391.)

There are some complaints made of the information given to the jury in the charge of the trial court with reference to the use of force by the conductor, or employes of the company, in ejecting the defendants in error from the train, but we think the objections to the charge in this particular are without merit, nor do we deem it necessary to comment on or discuss them at length at this time.

For the errors committed, herein indicated, the judgments must be reversed and the causes remanded.

REVERSED AND REMANDED.