# CASES DETERMINED

# SUPREME COURT OF NEBRASKA

AT

## JANUARY TERM, 1905.

---

CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY V.
ALEXANDER DUNDY KERR.

FILED JUNE 8, 1905. No. 13,503.

1. **Petition:** SUFFICIENCY ON APPEAL. Where a petition is for the first time assailed in this court because of its alleged failure to state a cause of action, its allegations will receive a liberal construction, with a view of giving effect to the pleader's purpose, and. if possible, sustaining the petition.

1a. ———: ———. A reviewing court will not only liberally construe a petition thus assailed, in order to uphold it if possible, but will view it in the light of the entire record; and where, from the nature of the answer and the testimony adduced, it appears that both parties have placed the same construction on such petition, this court will not ignore such construction in ruling on the sufficiency of the petition, even though the petition standing alone might not admit of such construction.

1b. ———: ———. A defective or ambiguous petition may be aided and its infirmities cured by averments in the answer. *Beebe v. Latimer*, 59 Neb. 305.

1c. ———: ———. The petition in the case at bar examined, and, when construed in the light of the entire record and under the rules above mentioned, *held* to state a cause of action, and sufficient to support a judgment in plaintiff's favor.

2. **Master's Liability.** The master is liable for the acts of his servant within the general scope of his employment while about his master's business, though the act be negligent, wanton, wilful or malicious.

(1)

2*a*. **Evidence** examined, and *held* sufficient to support a verdict in the plaintiff's favor, and to show that the acts done by the servant which are complained of were within the general scope of his employment and authority, and in furtherance of the business and interests of his master.

ERROR to the district court for Douglas county: WILLARD W. SLABAUGH, JUDGE. *Affirmed.*

*M. A. Low, W. F. Evans* and *Woolworth & McHugh,* for plaintiff in error.

*McCoy & Olmsted, contra.*

HOLCOMB, C. J.

The plaintiff, defendant in error, obtained a judgment in the court below for damages for personal injuries alleged to have been sustained by reason of the negligence of the servant of the defendant railway company, plaintiff in error, and it is sought by this action to secure a reversal of such judgment. The action is grounded on alleged negligence of the conductor of the defendant company while ejecting the plaintiff, a boy about 16 years of age, who was a trespasser on a moving freight train, and in so doing, as is alleged, throwing the plaintiff under the wheel of one of the cars, thereby causing the crushing of one of his lower limbs near the ankle, rendering amputation necessary. It is contended here on the part of the defendant that the judgment cannot be upheld, for the reason that the petition states no cause of action against the defendant, and that under the pleadings the defendant was entitled to a judgment in the court below. It is further contended that under the evidence the company is not liable to the plaintiff for the injury received by him; the conductor's interference, if any, being, as contended for, not for the purpose of putting the plaintiff off the train or of resisting his attempt to board the train, and therefore it was not within the scope of the conductor's employment, and hence the company is not legally liable therefor.

The petition, among other things, alleges: "The said Alexander Dundy Kerr, the plaintiff, was in the said town or city of Neola, and, while the said freight train was at said town or city of Neola, wishing to return to his home in said city of Omaha, and without having paid or offering to pay any fare, but peaceably and with the knowledge of the conductor thereon, became a rider on said freight train, in a position thereon on the south side of said train, wholly outside of the wheels of the cars, and south of the south rail of the roadbed, and in a position of safety from harm or injury to the plaintiff while the train was in motion, as was well known to said conductor, unless there was an injury to the train, or the plaintiff was forcibly ejected, or compelled to alight therefrom while the train was running at high speed; and said position of the plaintiff was beneath and in the middle, but at the very side, of the car on which he placed himself, and from which he could and did remove himself without any necessity or possibility of contact with the rail of the roadbed or wheels of the car, and the position of the plaintiff under the car was such that his presence there was and could be no impediment of or interference with the management and further operation of the train on its westward journey. But after said train was in motion, and while it was going on its way as aforesaid, at a slow rate of speed, the said conductor, who was a car length or more in front of the plaintiff (and no other employee of the defendant was near or in sight), in the performance of his duty, but in a gruff or angry tone of voice, ordered the plaintiff to get off and keep off of said train, and at the same time, in performing his duty, said conductor proceeded to and did alight from the car on which he (said conductor) was riding, and walked or ran backwards on the ground at the side of the train toward the place where the plaintiff was riding, with the apparent purpose of ejecting plaintiff from the train, and of keeping or preventing him from getting on the train again. The plaintiff heard the said order of said conductor, and, intending to obey it in all

respects, proceeded at once to alight from the train upon the ground, which he did in proper, upright position, with his feet upon the ground, entirely outside of the car and train, and with face forward, and the plaintiff was then in a position and place of absolute safety to himself, and would not have received any injuries to his person about or upon defendant's railway, except for the following facts: The plaintiff, the moment after alighting from said train, and before he had an opportunity or was able to turn and peaceably to leave the side of the train and to leave the railway of the defendant, as he intended to do, came full into the arms of said conductor, and said conductor, in the continued performance of his duty to the defendant, then and there, wilfully, wantonly, negligently, and with a total disregard for the safety of the plaintiff, and of his duty to avoid doing any injury to him, grasped with his hands the arms and shoulders of the plaintiff, and proceeded violently and negligently to shake the plaintiff, who was small of size, and to swing him about and off of the ground, so that, and wholly because thereof, without any fault on the part of the plaintiff, said conductor did, in such performance of his duty, wilfully, wantonly and negligently cause the right leg of the plaintiff to be thrown over and across the south rail of defendant's railway, and beneath the wheel or wheels of said train thereon, and to be run over and crushed a little above the ankle by the wheels of said train, and the leg of the plaintiff was thereby so badly mangled as to render necessary, in order to save the life of plaintiff, the amputation of said leg, as was done, about midway between the ankle and the knee." The answer, while admitting that the plaintiff received certain injuries, denies that the said injuries, or either or any of them, were caused or were the result of any carelessness or negligence on the part of the defendant, or of any of its servants, agents or employees. It is further alleged in the answer "that all of the said injuries were caused by and were the result of the plaintiff's own carelessness and negligence and unlawful

conduct; that the said plaintiff was at the time of receiving said injuries wrongfully, negligently and unlawfully, and without the permission or consent of the defendant, trespassing upon the property of the defendant; that at said time he negligently, wrongfully and unlawfully boarded one of the freight trains of the said defendant, and got upon one of the freight cars of said defendant in said train, under the floor thereof, while the said car and train were in motion, without the knowledge or consent of the defendant, and for the purpose of riding thereon without paying, or attempting to pay, or intending to pay the fare for riding thereon; that said position was an exceedingly dangerous one, and that plaintiff well knew at said time that the said position which he took under said car on said train was an exceedingly dangerous one, and that he had no right to get on or remain upon said car at said place or time, or at any other place or time; that while negligently and wrongfully riding upon said car, under the floor thereof, plaintiff negligently, and without the exercise of any care or caution, alighted from said car and train while the said car and train were in motion; and that by reason of said negligence and carelessness and unlawful and wrongful conduct, the plaintiff received the injuries in question."

The reply is a general denial.

1. With reference to the contention that the petition does not state a cause of action, it occurs to us that both parties to the controversy have at all times during the progress of the trial in the lower court regarded the pleading as sufficient. The defendant company has given the petition such a construction as required it to answer and defend in the action, and it would seem that this court ought not now to construe the petition as not stating a cause of action unless, under a liberal construction of all of its allegations, aided, if it is, by the allegations of the answer, with the view of sustaining it if possible, the conclusion is irresistible that it is defective in substance, and that no cause of action against the defendant has been

stated. The nearest the defendant has approached to a challenge of the sufficiency of the petition, or of the evidence in support of its allegations, was when, at the close of the submission of plaintiff's evidence at the trial, the defendant asked for a peremptory instruction to the jury to return a verdict in its favor on the ground that the testimony introduced in accordance with the averments of the petition affirmatively establishes the fact that the acts complained of were acts done by the conductor, not in the performance of his duty to the master, and not within the scope of his employment, and are acts for which he himself is liable. The motion can be regarded only as a demurrer to the evidence introduced by the plaintiff in support of the cause of action set forth in his petition. The rule in this jurisdiction is that, where an objection to a petition on the ground that it does not state a cause of action is not interposed till after the trial of the case, the pleadings will be liberally construed, and, if possible, sustained. *Chicago, B. & Q. R. Co. v. Spirk,* 51 Neb. 167; *Spirk v. Chicago, B. & Q. R. Co.,* 57 Neb. 565. Against an objection at the inception of a trial to the introduction of any evidence, on the ground that the petition does not state a cause of action, the pleadings attacked will be liberally construed, and, if possible, sustained. *Norfolk Beet Sugar Co. v. Hight,* 56 Neb. 162. The petition which is attacked for the first time in the supreme court on the ground that it does not state a cause of action will be liberally construed. *Omaha Nat. Bank v. Kiper,* 60 Neb. 33. In the opinion it is said:

"The petition was not assailed in the trial court, and the rule is that it should now receive a liberal construction with the view of giving effect to the pleader's purpose."

Counsel's argument directed to the alleged failure of the petition to state a cause of action is predicated on the averments found therein, wherein it is stated: "The plaintiff heard the said order of said conductor, and, intending to obey it in all respects, proceeded at once to alight from

the train upon the ground, which he did in proper, up-
right position, with his feet upon the ground, entirely out-
side of the car and train, and with face forward; and the
plaintiff was then in a position and place of absolute
safety to himself," etc.   These allegations, it is urged,
negative any possibility of liability on the part of the com-
pany for the injuries which were received by Kerr, because
the conductor had no duty to perform in removing the
plaintiff from the train, nor in preventing him from board-
ing it.   The petition, as drawn, it is asserted, presents a
case where a person standing opposite a train, not board-
ing it nor attempting to board it, is assaulted by the con-
ductor.   It is conceded that if the conductor should injure
a person by the use of unnecessary force in taking him
from a train or in resisting his attempt to board the train,
the company could be held liable for his acts; but in this
case it is urged there is presented simply the question of
a servant going outside of his employment to assault a
person.   This view seems to us to be hardly justified by
the pleadings.   It omits consideration of an essential ele-
ment which seems to be fairly, even though somewhat
obscurely, stated, wherein it is averred that the plaintiff,
the moment after alighting from said train, and before he
had an opportunity to depart therefrom, or was able to
turn and peaceably leave the side of the train, and to
leave the railway of the defendant, came full into the
arms of said conductor, and said conductor, in the con-
tinued performance of his duty to the defendant, then and
there, wilfully, wantonly, negligently, etc., committed the
acts complained of.   Manifestly the purpose of the pleader
was to allege facts showing that the plaintiff was not
guilty of contributory negligence producing or contribu-
ting to produce the injury he suffered, and that his posi-
tion was such as to avoid injury to himself by his own
acts in leaving the railway train, but that while he was
thus in the act of removing himself from the train in
obedience to the command of the conductor, and after he
had gotten to a place of comparative safety to himself in

his effort to extricate himself from the car under which
he was riding, he was seized by the conductor for the pur-
pose of ejecting him from the train and from the right of
way, and of keeping him therefrom, and in doing so there
was inflicted the personal injury for which a recovery is
sought.  This construction seems to have been given to
the pleadings by the parties to the controversy, and we are
disposed to hold, in view of the rule of liberal construc-
tion to which reference has been made, that the petition,
when thus construed, states facts disclosing the liability
of the master for the acts of the servant, and will support
a judgment in the plaintiff's favor.  Related to the rule of
construction just considered is another, which is ex-
pressed in *National Fire Ins. Co. v. Eastern Building &
Loan Ass'n,* 63 Neb. 698, where it is held that, "where a
petition is assailed for the first time by a demurrer *ore
tenus,* interposed at the close of the testimony, it will be
construed liberally and in the light of the entire record,"
and "where, from the nature of the answer and the testi-
mony adduced, it appears that both parties have placed
the same construction on a petition, the court should not
ignore such construction in passing on such demurrer,
even though the petition standing alone might not admit
of such construction."

We may also in this connection call attention to another
rule of construction having a direct bearing on the ques-
tion now being considered.  Conceding that the petition is
imperfect and ambiguous as to the situation of the parties
when the assault is alleged to have been committed, the
defendant by its answer has aided a defective petition and
supplied the imperfection, so that the two pleadings, when
construed in the light of each other, unmistakably, we
think, justify the inference that the injury occurred before
the plaintiff had disengaged himself from the train, and
while he was in the act of so doing, either by his own ac-
tion, or the action of the conductor, which is alleged as a
basis of recovery.  In view of the averments of the answer,
the conductor was manifestly acting in the strict line of

the duties owing to his master, in seeing to it that the plaintiff was compelled to leave the train; and, as thus presented, the question of surpassing importance is whether the injury was occasioned by the wilful, wanton and negligent acts of the conductor in ejecting the trespasser, or by the negligence of the plaintiff in freeing himself from the car on which he was riding, in obedience to the command of the conductor to get off of and leave the train. The petition alleges that the injury was caused by the act of the conductor in ejecting him from the car under which he was riding, and the answer alleges that, by the force of his own movements in extricating himself from the car, he permitted his limb to fall on the rail and to be crushed by the wheel on the moving train. It is said by this court that a petition which is defective by reason of the omission of material facts therefrom will be aided and cured by the averments of such facts in the answer. *Railway O. & E. Accident Ass'n v. Drummond,* 56 Neb. 235. "A defective or ambiguous petition may be aided and its infirmities cured by the averments of the answer." *Beebe v. Latimer,* 59 Neb. 305. It is difficult to perceive how it may be said that the plaintiff received the injury while in the unlawful act of stealing a ride, and while he was in the act of leaving the train, and at the same time be said that he had left the train and had ceased to be a trespasser, and that the conductor's acts as charged, conceding them to be true, were not done in the course of the performance of his duties as such.

2. Can the judgment be upheld and the plaintiff recover under the evidence? In respect of this question it is insisted that by plaintiff's own statement, assuming the truth of all that is said, it is conclusively established as a fact that the assault which it is alleged was committed by the conductor was not in the performance of any duty which he owed to the company, and was not an act for which the company is responsible. Counsel, in their briefs, say that it is fully admitted that if the conductor had made the assault for the purpose of putting the plain-

tiff, as a trespasser, off the train, or for the purpose of resisting an attempt to get on the train, such acts would be within the line of his duties, and for any improper conduct in that regard the company would be responsible; but, it is argued, if the alleged assault was not committed for the purpose of putting plaintiff off the train, or preventing him from boarding the train, then the assault would not be in the line of the duty of the conductor, but would be an act personal to him, for which the company is not responsible; and that the testimony of the plaintiff puts beyond peradventure of doubt the fact that the assault was not committed for the purpose of either removing him from the train, or preventing him from again boarding it. This contention is based on the theory that the plaintiff at the time of the alleged assault had left the train, and was manifesting no purpose or intention of returning or repeating the trespass he had committed, and for that reason the act of the conductor was not in the course of the performance of his duties. The conductor, in testifying, says he was about a car length from the plaintiff as he was getting off the truss bars on which he was riding; that he had hold of him when he was hurt; that the plaintiff was lying on the ground, and he pulled him away from the train; that the plaintiff was three or four feet from the wheel, and that he pulled him from under the train after the wheel had run over the one foot. The plaintiff says he heard the conductor halloo: "You boys get off of here and stay off of here." He testifies that, at the time, the conductor was about a car length ahead, and in the act of alighting from a freight car, down the side of which he had climbed. The plaintiff then says he immediately tried to get out, and got out; that he took hold of the post with his hands, his feet being out over the outside bar, and swung himself out from under the car; that he alighted on the ground all right, and the force he received while riding on the train caused him to run along two or three steps after getting off; that the conductor ran toward him; that he had his hands on the bar, to try to

turn out, and before he could turn out the conductor caught him; that he grabbed and shook him several times, and pretty severely; that he lost his footing; and that the conductor swung him around and the wheel passed over his foot; that the conductor pulled him out, and laid him down beside the track; and that he said to the conductor: "Now, see what you have done." On cross-examination the witness says he was entirely outside the car and train; that he was not aboard the car, nor was he trying to get on the car, but was trying to get out, and that he was standing or walking along the car after he had gotten off the truss rods; that he was outside of the car, not on nor trying to get on the car, and that only his hands were on the car; that while in this position he was assaulted by the conductor; that it was not necessary to assault him to get him off the car, and that he was not trying to get on the car, and that there was no assault to keep him from getting on the car, and that he was not trying to get on.

This evidence, drawn out on cross-examination, the substance of which we have given, is especially relied on to establish the essential fact contended for, to wit, that the conductor's assault was not within the scope of his duties, since it was neither for the purpose of putting the plaintiff off the train, nor for the purpose of preventing him from getting on the train. The record does not necessarily establish the fact contended for, nor are we to be governed solely by the statements of the witness as testified to on cross-examination, especially so, where, in order to ascertain the real and exact situation, reference must be had to his testimony preceding, as well as that which follows. It is from all that is said and testified to by him, reconciling all parts, wherever possible, that we may ascertain the truth of the matter in controversy. When so considered, we think the fair inference is that as the plaintiff was removing himself from under the car where he was riding, and after he had alighted on the ground in a position not altogether upright, but approximately so, and before he had freed himself from the train, and while his hands were

hold of the bars or rods where he had been riding, and as he was moving forward with the train, he came in contact with the conductor, who was traveling toward the rear of the train in order to drive him away, and who, seizing hold of him while yet in the position described, by throwing him around, threw his foot or limb on the rail and under the wheel, by reason of which he received the injury complained of. We are not to be understood as saying this is the literal truth, but there is evidence in the record tending to establish this state of facts, and sufficient to support the verdict of the jury, who obviously found such to be true. The plaintiff's companion, being somewhat older, testifies that, at the time or immediately preceding the injury, the plaintiff was "sitting kind of side-saddle like" on the truss rods, with his feet hanging over the outside rod; and that, while the conductor was coming toward the plaintiff, the witness saw him start to get out, and saw his feet on the ground; that his feet were on the ground, and he was in a kind of crouched position; that his hands were not on the ground. A brakeman, one of the defendant's witnesses, testifies that the plaintiff was lying by the side of the track as the conductor made a run or jump or spring toward the car under which the plaintiff had been riding. As to the contention that this evidence indisputably establishes the fact that the plaintiff had left the train, and had ceased to be a trespasser, and was making no attempt to again board it, we think it falls far short of proving such to be the case. Suppose the plaintiff had been riding on top of a freight car, and at the command of the conductor had descended the ladder at the side, with the view of leaving the train in obedience to the command, but just as he had alighted on the ground, and while yet hold of the ladder on which he had descended, and while outside of the train, and with no intention of returning to it, but while in the position mentioned, the conductor had seized him and thrown him in such a manner as to injure his person by the car passing over his limb, could it be successfully contended that the act of

the conductor was beyond the scope of the duties of the servant to his master, and for which no liability would attach to the latter? These two boys had been playing hide and seek with the trainmen. They had been dodging from side to side of the train in order to escape the trainmen, and steal a ride to Omaha. The conductor was endeavoring to prevent them from so riding, as it was his duty so to do. He was chasing them from the train. He was not only ejecting the plaintiff from the car on which he was riding at the time of the injury, but he was endeavoring to prevent him, as well as his companion, from riding on the train anywhere or in any position other than as regular passengers upon payment of fare. This was obviously his object in pursuing the plaintiff. This is why he seized, shook him, and swung him so that he lost his footing, if he did so. He had no personal ill will or malice toward the plaintiff, and so testifies. It was not for revenge nor for any other purpose than to prevent the plaintiff from riding in the manner he was endeavoring to ride, and from trespassing on the company's rights, that actuated the conductor in doing what he did at the time.

The fact that the plaintiff was not at the time trying to again board the train, or intending to do so, cannot materially affect the situation, or alter the rights, duties and liabilities of the respective parties. Such might be material, had the plaintiff entirely removed himself from the train and right of way, and for the time being ceased to be a trespasser, but he had not done this. He was still trespassing. He was yet hold of the car on which he had been riding. The act of removing himself from the train had not been completed. The act of the conductor, assuming the plaintiff's theory to be correct, was but one of a series of continuing acts set in motion with the view of ejecting the plaintiff from the train—a place where he had no business to be—and until the act had been fully completed, and the purpose for which the different acts were set in motion accomplished, the conductor was, as it seems to us, manifestly acting within the scope of

his employment, and in the furtherance of the interests and business of the master. It was his business to drive off trespassers, and to keep them off, and it was this very business he was engaged in when the acts of which complaint is made were performed. In brief, if the boy was hurt under the train, as he undoubtedly was, and as a part of the transaction of his riding on and attempting to leave the train when ordered so to do by the conductor, by what manner of reasoning is the inference warranted that he had left the train—had ceased to be a trespasser —and for that reason the conductor's acts were beyond the scope of his authority? If plaintiff was hurt while leaving the train, then it was his own or the conductor's wrong-doing that contributed to the injury, and if the latter, then the conclusion, we think, is irresistible that it was done in the course of the performance of his duties and in the line of his employment.

The general rule is that a master is liable for injuries to third persons arising from the negligence of his servant while in the lawful and authorized employment of the master. *Toledo, W. & W. R. Co. v. Harmon*, 47 Ill., 298; *Gray v. Portland Bank*, 3 Mass. 363; *Gass v. Coblens*, 43 Mo. 377; *Harriss v. Mabry*, 23 N. Car. 240. The authorities say a master is liable for the acts of his servant within the general scope of his employment while about his master's business, though the act be negligent, wanton, wilful, or malicious, and this is so though the act complained of has been expressly forbidden by the master. 4 Cur. Law, p. 608, and authorities cited. See also *Burns v. Glens Falls, S. H. & Ft. E. St. R. Co.*, 38 N. Y. Supp. 856; *Craker v. Chicago & N W. R. Co.*, 36 Wis. 657, and *Cohen v. Dry Dock E. B. & B. R. Co.*, 69 N. Y. 170. In the last case cited, in the opinion it is said:

"A master is liable for the wrongful act of his servant, to the injury of a third person, where the servant is engaged at the time in doing his master's business, and is acting within the general scope of his authority, although he is reckless in the performance of his duty, or through

lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances, goes beyond the strict line of his duty, and inflicts unnecessary and unjustifiable injury."

On the other hand it is said: A master is not liable for a malicious or wanton act of a servant done outside of his employment, without regard to his services, and in order to effect some purpose of his own. *Mott v. Consumers' Ice Co.*, 73 N. Y. 543. In this same case, however, it is declared that "for the acts of a servant within the general scope of his employment, while engaged in his master's business, and done with a view to the furtherance of that business and the master's interests, the master is responsible, whether the act be done negligently, wantonly, or even wilfully."

Tested by the principle deducible from these authorities, there seems little room to doubt that the acts of the conductor alleged in the petition, and as testified to by the plaintiff, and for which the company is sought to be held responsible, if believed by the jury, were within the general scope of the employment of the servant, were committed while he was engaged in his master's business, and with a view to the furtherance of the business and interests of the master. This court in an early case has recognized and given expression to the rule adverted to, wherein it is held that a corporation is liable for acts committed in the course of the agent's employment, or in connection with the transaction of the business of the corporation. *Miller v. Burlington & M. R. R. Co.*, 3 Neb. 219. A case well in point is *Hamilton v. Chicago, M. & St. P. R. Co.*, 119 Ia. 650, 93 N. W. 594. There a conductor in ejecting a trespasser from the train, after he had climbed thereon the second or third time, seized him by the collar, slapped and beat him with his hand, then stopped the train and put the trespasser off. It is held that the beating administered by the conductor was within the line of his employment, and that the master was liable. In the opinion it is said:

"There is no question that if, in removing plaintiff as a trespasser, the defendant's conductor, who was charged with the duty of removing trespassers from the train, caused him to suffer personal injury by reason of attempting to put him off at a dangerous place or by using unreasonable and unnecessary violence, the defendant would be liable for his acts, even though they were wanton, wilful, malicious, and unlawful." Citing a number of authorities. "This proposition," continues the court, "is conceded by counsel for appellant, but he contends that the evidence shows the beating of the plaintiff to have been a separate and distinct transaction. * * * It was not as the result of any personal malice or ill will of the conductor, but because, as conductor, he was irritated by the conduct of plaintiff, and, as he declares, was actuated with the purpose of teaching the plaintiff a lesson, so that when he was put off he would stay off. There is nothing to indicate that the conductor, under pretense of discharging his duty as conductor, was taking the opportunity to injure plaintiff on account of his personal ill will. He was confessedly acting throughout as conductor—discharging the duty of preventing plaintiff, as a trespasser, from riding on the train. We think the case is plainly one where the wrongful acts of the conductor, if any, were chargeable to the defendant."

The same may be said of the facts in the case at bar. The conductor was manifestly acting through no personal ill will to the plaintiff. His acts were with the view of removing the plaintiff, as a trespasser, and to prevent a recurrence of the trespass. He was, if the plaintiff's story is believed, forcibly removing him from the train and from the position in connection therewith he was occupying when the assault was committed, for the express purpose and with the sole object in view of preventing him from further riding on the train, which he was endeavoring to do, and to prevent a continuance of the trespass, and the act complained of was one of a series or a part of a continuous act brought about for this very

purpose. The case, as it appears to us, is clearly distinguishable from those cases holding the master not liable where the act of the servant is done outside of his employment and without regard to his services. The difficulty, of course, lies in applying the rule and drawing correctly the line which shall determine whether the act is within or without the scope of the duties of the servant in the course of his employment. In *Georgia R. & B. Co. v. Wood*, 47 Am. St. Rep. (Ga.) 146, cited by defendant in support of its contention, it appears that certain boys had been attempting to steal a ride upon a train, and that at the time of the act complained of they had left the train and right of way, and were standing in a yard on private property. A stone was thrown by one of the trainmen at one of the boys, which struck a girl who was standing on her father's porch. The company was held not liable because the act was not within the scope of the employment of the servant who was acting in the capacity of a brakeman. The court say that no presumption arises that the servant was acting within the scope of his employment in throwing a stone at this boy, with a view to injure him, after he had desisted from the trespass and gone off from the train. "If," say the court, "the brakeman, while these boys were engaged in the trespass, had, in attempting to prevent the trespass or cause them to desist, injured one of them through negligence or carelessness, or by using more force than was necessary for the purpose, the company would perhaps be liable. * * * But after the boy had desisted the company would not be responsible for an injury inflicted on him by the brakeman in attempting to punish him for the trespass." For like reason it is held in *Golden v. Newbrand*, 52 Ia. 59, that the master was not liable for the acts of the servant because, under the circumstances, they were not within the scope of the duties for which employed. In that case the servant was employed to protect property, the same being a brewery operated by the master. The party assaulted had thrown a brick into the brewery, striking some of the property

therein, and then turned and ran, when the servant, after chasing him some 15 or 20 feet from the building, shot the fleeing party in the back of the head. It is said by the court:

"We think the fact that the deceased was retreating from the brewery, at the time the fatal shot was fired, shows conclusively it was not fired for or with the intent of protecting the brewery, or in the line of Roenspeiss' duty. * * * To protect the brewery did not require Roenspeiss to shoot and kill a person who was retreating therefrom."

*Davis v. Houghtellin,* 33 Neb. 582, is also relied on. In that case the servant was employed to guard certain feed upon certain premises, and to seize and detain persons who might be found disturbing such feed. The party injured had occasion to be on the premises, and while there the servant, in attempting to seize and detain him, carelessly and negligently shot and killed him. There was no allegation that the third party was molesting the feed, or attempting to do so, and it was held that a demurrer to the petition was rightly sustained. The case, we think, in principle is clearly distinguishable from the one at bar. Other like cases are cited, but it will serve no useful purpose to advert to them at length. Suffice to say that the facts in these several cases on which the right to recover must rest are held to negative the idea that the servant at the time of the act complained of was acting in the line of his duty, and within the scope of the employment for which he was engaged. In such case the servant is held to be at the time when the injury was inflicted acting for himself and as his own master, and therefore the master employing him was not liable. The acts relied on as establishing the liability of the master in each instance are held not connected with the business in which the servant was engaged, and it is held that the relation of master and servant was for the time suspended. As we have attempted to elucidate in the case at bar, the acts of the servant which are made the basis for a recovery were

in the furtherance of the master's business, and with the view of discharging the duties of the servant owing to the master by ejecting the plaintiff as a trespasser, and preventing a recurrence of the trespass then being committed. This was in the line of his duty. It was a part of his employment. For the acts of the servant while so engaged, even though wanton, wilful, or unlawful, as is expressed by the authorities, the master is held liable. Entertaining, as we do, the views heretofore expressed, the conclusion is reached that the evidence is sufficient to sustain the verdict, and to disclose a liability on the part of the defendant company for the acts of the servant as alleged in the petition and proved by the evidence.

Finding no prejudicial error in the record, we are of the opinion that the judgment should be affirmed, and it is accordingly so ordered.

AFFIRMED.