**Keith BEATTIE, Plaintiff,**

v.

**CITY OF ST. PETERSBURG BEACH, et al., Defendants.**

No. 86–1562–Civ–T–13.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 30, 1990.

Ronald B. Halpern, Mark Brown, Rebecca Morgan, American Civil Liberties Union, St. Petersburg, Fla., for plaintiff.

Luis Prats, Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, Fla., for defendants.

SUMMARY JUDGMENT

CASTAGNA, District Judge.

The parties have stipulated to the relevant facts in this case. The plaintiff, Keith Beattie, is employed by the City of St.

Petersburg Beach (the City) as a firefighter and has been a member of the Internal Association of Firefighters AFL–CIO (the Union) since he was employed on August 24, 1982. In October of 1983, the City and the Union entered into a collective bargaining agreement which provides that the City has the right to "hire, examine, classify, promote, train, transfer, assign, schedule and retain employees in positions with the City" and that the City shall have the right to "establish, implement, and maintain an effective internal security practice." *See* Exhibit F of the Statement of Facts, paragraph 3.1 F and M. The agreement requires the firefighters to submit to annual physical examinations. The City has required firefighters to submit to annual physicals since 1974.

The purpose of the physicals is to determine whether the firefighters are fit to perform their job-related duties. The physicals are given in October and November of each year and are conducted by physicians of the City's choice. Since their inception in 1974, the physicals have included the taking of urine samples from each firefighter. The plaintiff has given a urine sample every year since 1983, but the samples have never been tested for drugs. The samples are always taken in private at a hospital or a doctor's office.

Under their union contract, every firefighter is entitled to have a physician of his choice render a second opinion concerning any disputed aspect of his physical, including the drug test results. If the second opinion differs from the opinion of the City's doctor, then the City and the firefighter are entitled to employ a third physician to render an opinion on the disputed medical question. The third physician's opinion is final.

In August of 1986, the City decided to incorporate into the annual physicals a urinalysis to determine whether the firefighters use controlled substances. The purpose of incorporating the test into the physicals is to provide the City with additional information concerning the fitness of its firefighters to perform their job-related duties. The final decision to include a drug test in the physicals was made by defendant Royle in his capacity as City Manager. On October 16, 1986, he circulated a memorandum to all firefighters informing them that their annual physical exam would include a drug test. On October 17, 1986, the City implemented its testing program.

Under the plan, the firefighters are required to sign a consent form evidencing their agreement to submit to the drug test. Failure to consent results in a firefighter's being sent home for that day without pay. Following an initial refusal, the firefighter is scheduled for a second test. If he again refuses to consent to the test, he is immediately dismissed.

If a firefighter consents to the test and the test is positive, then a second test is administered in order to verify the first test. If the second test is positive, the firefighter is required to seek rehabilitation through the Tampa Bay Health Plan. If the firefighter refuses treatment he is immediately terminated.

The plaintiff's physical, including the drug test, was scheduled for October 29, 1986. The defendants admit that they had no reasonable suspicion or probable cause to suspect that the plaintiff was using controlled substances either on or off duty. The plaintiff agreed to the physical exam, but refused to consent to the drug test. The plaintiff's superiors, defendants Hartman and Headley, instructed plaintiff to leave work and informed him that he would not be paid for that day's work. The plaintiff's physical was rescheduled for November 4, 1986, but never took place due to an illness. As of the date of this Order, the plaintiff has not been tested.

■ The plaintiff challenges the City's drug testing program, arguing that it violates the Fourth Amendment to the United States Constitution. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." The basic purpose of the amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *New Jer-*

*sey v. T.L.O.*, 469 U.S. 325, 335, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1984) quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). The Fourth Amendment is implicated whenever a governmental entity conducts an unreasonable search, even when the government is acting as an employer. *National Treasury Employees Union v. Von Raab*, 489 U.S. ——, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989); *O'Connor v. Ortega*, 480 U.S. 709, 717, 107 S.Ct. 1492, 1498, 94 L.Ed.2d 714 (1987) (plurality opinion).

■ To determine whether a particular governmental activity violates the Fourth Amendment, the court must decide whether the activity constitutes a search, and, if it does, whether the search is unreasonable. Here, it is beyond dispute that the urinalysis at issue in this case constitutes a search. *See Von Raab*, 109 S.Ct. at 1390; *Skinner v. Railway Labor Executives' Association*, 489 U.S. ——, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989). An urinalysis is a highly intrusive means of investigating public employees. As the United States Supreme Court recognizes:

> There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.

*Skinner*, 109 S.Ct. at 1413 quoting *National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir.1987), *aff'd in part, vacated in part*, 489 U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). Furthermore, urinalysis allows the government to delve into both job-related and off-duty aspects of an employee's private life. Such testing infringes directly upon the privacy and dignity interests which the Fourth Amendment was designed to protect. *See Capua v. City of Plainfield*, 643 F.Supp. 1507, 1511 (D.N.J. 1986) (urine testing program for city firefighters "reports on a person's off-duty activities just as surely as someone had

been present and watching.") Accordingly, in order to pass constitutional muster, the City's program must satisfy the reasonableness requirement of the Fourth Amendment.

■ The defendants admit that there is no probable cause nor individualized suspicion of drug use, either work-related or otherwise, by the plaintiff. However, the lack of probable cause or individualized suspicion does not make the search *per se* unreasonable. *Von Raab*, 109 S.Ct. at 1390. Rather, "where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require ... some form of individualized suspicion in the particular context." *Von Raab*, 109 S.Ct. at 1390; *accord, Skinner*, 109 S.Ct. at 1413–14.

In the case at bar, the privacy expectations of the plaintiff are lessened. The City's firefighters regularly submit to annual physicals to determine their fitness for duty. The firefighters regularly give urine samples as part of their physicals. There is no direct observation of the act of urination as a firefighter provides the specimen. The only change in procedures under the City's plan is that these samples are now tested for drugs and the results of the tests are kept confidential. However, although lessened, important privacy expectations still exist. The drug test reveals aspects of a firefighter's life different in kind and quality from the prior examinations. In addition to the physical attributes of the firefighter, the tests reveal activities and habits of a firefighter's personal life. The firefighters have a legitimate interest in keeping their personal life shielded from the government's prying eye, especially when the activity revealed is frowned upon by a large segment of the community and may constitute a crime. In order to pass constitutional muster, the City must demonstrate a compelling interest that outweighs these privacy concerns.

The City has a legitimate interest in protecting the public safety and welfare by ensuring that its firefighters are fit to perform their duties. The purpose of the drug-testing program is to provide the City with additional information concerning the fitness of its firefighters to perform their duties. However, the City has no evidence of drug use among any of its firefighters either on or off duty. Nor is there any history of any accidents, fatalities, injuries or property damage that can be attributed to drug use by the firefighters. Therefore, the Court can only conclude that the City's policy does not address any past or current problem among its firefighters, but is directed solely at deterring future problems.

On the facts of this case, the Court finds that the City's interest is not of such a compelling nature that it is impractical to require some level of individualized suspicion. The annual physicals have protected the public's welfare since 1974. The City does not claim that the physical exams and daily observation of the firefighters' job performances are now insufficient to judge their job fitness. Without some form of individualized suspicion or some compelling reason beyond a hypothetical future problem, the invasion of the firefighters privacy interests is unjustified in this case.

The Court is cognizant of the recent Supreme Court opinions upholding drug testing but finds that those cases, which require a case-by-case balancing of individual and governmental interests, are distinguishable from the case at bar.

*Skinner* involved the Federal Railroad Administration (the FRA) regulations requiring (1) mandatory blood and urine tests of all railroad employees involved in railroad accidents and (2) discretionary testing where a supervisor has a reasonable suspicion that an employee's acts or omissions contributed to an accident or that an employee is under the influence of alcohol based upon specific, personal observations concerning the appearance, behavior, speech or body odors of the employee. The FRA implemented these procedures to prevent accidents and casualties in railroad operations that result from alcohol and drug use. *Skinner*, 109 S.Ct. at 1408–09. FRA and industry studies revealed a long history of substance abuse among railroad employees that directly contributed to serious train accidents resulting in numerous fatalities and millions of dollars in property damage. In response, the FRA tailored its testing program to fit the problem and limited the testing to employees involved in accidents and those for which a reasonable, individualized suspicion of substance abuse exists. This compelling need to cure past problems and prevent future accidents outweighed the employees' privacy interests in *Skinner*.

*Von Raab*, which involved a drug testing program implemented by the United States Custom Service (the Service), is more on point. The Service's program made promotion or transfer in one of three categories contingent on successful completion of a drug test. The three categories were (1) any position directly involved in drug interdiction or enforcement of related laws, (2) any position where the employee was required to carry a firearm, and (3) any position where the employee was required to handle classified material.[1] *Von Raab*, 109 S.Ct. at 1388. The purposes of the Service's program were to deter drug use among those eligible for promotion or transfer to sensitive positions and to prevent the promotion or transfer of drug users to such positions. *Id.* at 1390. In balancing the Service's interests against those of the employees, the Supreme Court found that (1) the Service is the front-line defense against one of the greatest problems affecting the nation, i.e., drug importation and abuse, (2) many of the Service's employees are often exposed to criminal elements and large amounts of controlled substances and are therefore constantly subject to physical threats, bribery and other temptations, (3) the national interest in

1. The Supreme Court did not pass on the reasonableness of the Service's program as it pertained to employees who are required to handle classified material because of ambiguities in how this category is defined. The Court remanded that portion of the case for further consideration by the Fifth Circuit Court of Appeals. *See Von Raab*, 109 S.Ct. at 1396–97.

self-protection could be irreparably damaged if the Service is not allowed to ensure that its front-line personnel are physically fit and have unimpeachable integrity and judgment, (4) employees who carry firearms may use deadly force in the discharge of duties, and (5) the public should not bear the risk that employees suffering from impaired perception and judgment will be promoted or transferred to positions requiring the use of deadly force. *Id.* at 1392–93. The Court found these compelling concerns outweighed the employees' lessened privacy interests and therefore justified a suspicionless search.

In contrast, the case at bar does not present similar compelling interests as were present in either *Skinner* or *Von Raab*. Unlike the railroad industry in *Skinner*, there is no history of substance abuse among the City's firefighters. The record reveals no accidents, fatalities or injuries attributable to a firefighter's use of drugs while on duty. Additionally, although firefighters are engaged in hazardous work involving the public safety and must be able to think and react quickly, the City's firefighters do not carry firearms and are not required to use deadly force in the regular course of their duties.[2]

The Court in no way means to belittle the role of firefighters. Firefighters provide important and indispensable protection to the property and persons in the community. Furthermore, the City's interest in ensuring a firefighter's fitness in the face of the ever-growing drug problem in today's society is equally important. Nevertheless, the Court does not believe that the role of a firefighter can be analogized to a customs agent whose job is drug interdiction or involves carrying a firearm. Nor does the record in this case reflect any substantial number of drug-related accidents to justify the drug-testing at issue. Rather, the Court finds that the City's interest is not placed in jeopardy by requiring at least some individualized suspicion before testing its firefighters. As Justice Brandeis so eloquently stated:

> Experience should teach us to be most on our guard to protect liberty when the Government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well meaning but without understanding.

*Olmstead v. United States,* 277 U.S. 438, 479, 48 S.Ct. 564, 572–73, 72 L.Ed. 944 (1928) (Brandeis dissenting).

As stated earlier, the City provides no reason why regular medical examinations and job supervision are insufficient to protect its interest. The City's generalized fear that a drug problem will arise at some future time, without more, is insufficient to overcome even the lessened privacy interests of the firefighters in this case. Absent some compelling need, a search conducted without probable cause or at least individualized suspicion cannot withstand Fourth Amendment scrutiny. No compelling need exists in this case. Accordingly, the Court finds that the City's drug testing program constitutes an unreasonable search and therefore violates the Fourth Amendment.[3]

Therefore, the Clerk is directed to enter summary judgment in favor of the plaintiff Keith Beattie and against the defendants.

The parties are directed to meet within sixty (60) days to attempt to settle any remaining dispute as to damages. The parties are directed to file a notice within ten (10) days of that time indicating the status of this case.

DONE AND ORDERED.

---

**2.** Nor, of course, are they involved in the front-line defense of our nation or other law enforcement activities or subject to criminal elements or controlled substances.

**3.** Because the Court finds that the City's drug testing program violates the Fourth Amendment, it finds it unnecessary to address the remaining constitutional questions raised by the plaintiff.