Carl WILLNER, Plaintiff,

v.

Richard L. THORNBURGH, et al., Defendants.

Civ. A. No. 90–0535.

United States District Court, District of Columbia.

May 15, 1990.

Stephen H. Sachs, Stephen M. Cutler, Washington, D.C., for plaintiff.

Peter Robbins, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

█ This is yet another case concerning the federal government's effort to create a drug-free workplace for its employees by compelling urine drug testing without any suspicion of drug use. In this instance, the individual plaintiff, Carl Willner, challenges drug testing required during pre-screening of new employees under the Department of Justice Drug Free Work Place Plan ("DOJ Plan") adopted pursuant to Executive Order 12,564, which declared, inter alia, that "[p]ersons who use illegal drugs are not suitable for Federal employment."

Willner is an attorney who has been in private practice in the District of Columbia. He has been tentatively accepted for employment by the Antitrust Division of the Justice Department. His position would not require access to Top Secret classified information, at least initially. Nevertheless, pursuant to standard practice under the DOJ Plan, Willner was asked to submit to a urine test to determine possible recent drug use. He refused as a matter of principle and brought this action to test the constitutionality of this aspect of the DOJ Plan.

The case is before the Court on Willner's motion for preliminary injunction, which has been fully briefed and was argued on April 24, 1990. Because the motion papers, which include declarations and supporting data, fully present the issues, and controlling facts are undisputed, the Court will dispose of the case on the merits pursuant to Fed.R.Civ.P. 65(a)(2).[1]

1. The Court notified the parties at oral argu- ment that it contemplated proceeding to the

A one-time mandatory pre-employment screening urine test is required of all attorneys accepted for positions in the Department of Justice's Offices, Boards and Divisions (OBD) component, which includes the Antitrust Division. Under the current, revised OBD plan, every individual tentatively selected for employment in OBD must provide a urine sample for drug testing in ordered to be hired. The relevant testing procedures are detailed in the Supreme Court's decision in *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 1388–89, 103 L.Ed.2d 685 (1989). In general, the applicant is provided 48 hours advance notice. The applicant must go to a designated testing location and provide a sample behind a partition or stall with an attendant present outside. The attendant does not observe the urination unless there is reason to suspect tampering.

█ It is well settled that a non-consensual urine drug test is a search governed by the requirements of the Fourth Amendment to the Constitution. *Von Raab*, 109 S.Ct. at 1390. However, suspicionless testing is not unconstitutional per se, so long as it serves some government interest beyond the normal need for law enforcement. *Id.* In such cases, though, a reviewing court must "balance the individual's privacy expectations against the government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Id.*

Various urine drug testing plans affecting federal employees have been the subject of various court decisions. The courts in this Circuit have applied the Fourth Amendment on a case-by-case basis. Suspicionless testing of employees *or* applicants, when allowed, has been carefully restricted to persons with special duties of particular public consequence, such as those requiring security clearance, those having direct involvement in jobs affecting public safety, and those working directly with aspects of drug enforcement. *See Harmon v. Thornburgh*, 878 F.2d 484 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *National Federation of Federal Employees v. Cheney*, 884 F.2d 603 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 864, 107 L.Ed.2d 948 (1990); *American Federation of Government Employees v. Skinner*, 885 F.2d 884 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1960, 109 L.Ed.2d 1960 (1990); *Transportation Institute v. U.S. Coast Guard*, 727 F.Supp. 648 (D.D.C.1989).

In *Harmon*, the Court of Appeals held that the government's interests in workforce integrity, public safety, and protecting sensitive information did not make reasonable under the Fourth Amendment OBD's plan for random drug testing of certain existing employees, including Antitrust Division attorneys. While the Court of Appeals upheld random testing for employees with access to Top Secret classified information and suggested that drug testing of drug prosecutors would be permissible, it rejected the Department's plan to drug-test all criminal prosecutors and all employees with access to grand jury materials. The central issue in this case, then, is whether, between a current Antitrust Division attorney and an applicant for such a position, there is a constitutional distinction that would render the testing of the latter permissible under the Fourth Amendment.

The Department's position stems from its appraisal of the drug problem in the work place expressed in the following terms when the DOJ Plan was announced:

Studies show that employees who use drugs tend to be less productive and less

---

merits under this rule. Although counsel for Willner insisted that the case was not ready for final resolution because facts remained in dispute, counsel for the Justice Department indicated that he did not object. However, on May 7, 1990, the Department filed a motion to dismiss or for summary judgment, which essentially constituted an additional reply brief on select-

ed issues. The Court concludes that the "factual" issues still in dispute—concerning the accuracy of the drug testing program and the extent to which there is a drug problem at the Department of Justice—are not material in the present context. Accordingly, the Court sees no reason to await another round of the increasingly acrimonious briefs filed in this case.

reliable. Impairments from the use of illegal drugs can linger for days beyond the time the use may recognize the immediate effects of the drug. Even for employees who use drugs off-duty, then, illegal drug use can have an unpredictable impact on judgment and performance on duty. And, of course, there is no guarantee that an employee using drugs off-duty will not someday soon begin using illegal drugs on the job. Drugs can induce changes in behavior that endanger co-workers or members of the public. Drug-users may also be susceptible to espionage, bribery, and blackmail.

There is no basis in fact to dispute the Department's original view of the possible consequences of employees' drug use or these observations, although the examples of actual known use by Department of Justice workers are relatively few.

In support of its pre-screening test program, the Department emphasizes that an individual can avoid testing by withdrawing his application when notified of the testing requirement and argues (1) that the expectation of privacy and resulting invasion of privacy are less than that which occurs in the case of an existing employee singled out for random testing; and (2) that the need for drug testing of applicants is enhanced by the reduced opportunity to observe these individuals as compared to existing employees.

The Department's argument has little force in light of the Court of Appeals' decision in *Harmon*. The clear thrust of *Harmon* is not that existing employees have such strong privacy expectations as to overcome strong government interests in drug testing or that the opportunity to observe them is sufficient to foreclose the need for testing. *See* 878 F.2d at 489. Instead, *Harmon* rested on the court's firm rejection of the purported government interests in such testing. *Harmon* examined the three interests recognized as valid by the Supreme Court in *Von Raab*, workforce integrity, safety, and protecting sensitive information, and concluded that none of them were of value for most of the

employees represented by the *Harmon* plaintiffs, including Antitrust Division attorneys without access to Top Secret information.

The Court of Appeals rejected the workforce integrity interest on the ground that "*Von Raab* ... suggests that the government may search its employees only when a clear, direct nexus exists between the nature of the employee's duty and the nature of the feared violation." 878 F.2d at 490. *Harmon* gave as an example of where there was no such nexus with drug use the case of "an attorney who prosecutes antitrust or securities fraud cases." 878 F.2d at 491. Plainly, then, the required nexus is lacking in Willner's case.

The Court of Appeals rejected the safety interest on the ground that an error by a Justice Department employee created only an "indirect risk ... wholly different from the risk posed by a worker who carries a gun or operates a train." 878 F.2d at 491. Willner is not seeking a position that puts him in a position to create direct safety risks as defined by the Court of Appeals.

Finally, the Court of Appeals rejected the sensitive information interest except with respect to employees whose jobs required Top Secret clearances, reasoning that "caution should be used in approving this justification for testing." The declaration of John W. Clark, deputy director of operations for the Antitrust Division, indicates that work in the division may require access to Top Secret classified information, that two attorneys in the Communications and Finance section, where Willner has been assigned, have standing Top Secret clearances, and that others may be required to obtain such clearances on relatively short notice. Willner, however, rests on the assurances of section officials that the position he seeks "would not require" him to obtain Top Secret clearance. It is clear, then that he has made a choice to sacrifice potential opportunities within the division and any contribution he could make in sensitive cases if such assignments would require the drug testing to which he

so strenuously objects.[2]

Nothing in the Court of Appeals' discussion rejecting the validity of these government interests provides any basis for arguing that the analysis should be any different in the case of a job applicant. Thus the law of this Circuit does not allow this Court to act on the basis of the Department's serious but generalized concerns. Nevertheless, the Court will briefly consider the distinctions between an incumbent employee and an applicant such as Willner to make certain that these factors do not require a result different from *Harmon*. The Department points to two such distinctions: (1) that an applicant has a reduced expectation of privacy compared with a job incumbent; and (2) that the government has a significantly greater need to test applicants than it has to test incumbents, whom it can observe on the job for signs of drug use.

With respect to expectations of privacy, the Department argues that an outside applicant has no genuine expectation of privacy because (1) he is informed in advance of the testing requirement and would be entitled to simply withdraw his application at that stage; (2) he is informed 48 hours in advance of the actual testing; and (3) by complying with the thorough background investigation pursuant to application, he has consented to a broad intrusion into his privacy. The Department urges that Willner in particular had no expectation of privacy because he was an attorney of record in the *Harmon* case and thus is intimately familiar with the Department's drug testing program.

2. The Court does not decide whether the Department could lawfully make acceptance of a Top Secret clearance, with a corresponding obligation to undergo drug testing, a condition of continued employment with the Antitrust Division.

3. *Von Raab* concerned *internal* applicants for transfer or promotion, whereas the present case deals with an outside applicant. For purposes of evaluating expectations of privacy, however, the factors deemed relevant—the testing only of those who seek new positions, the advance warning that drug testing is required, the advance notice of the actual test, and, particularly, the type of job sought, *see Von Raab*, 109 S.Ct. at 1384 n. 2, 1393–94—do not suggest that the two types of applicants be treated differently.

The Court of Appeals has held that "a search otherwise unreasonable cannot be redeemed by a public employer's exaction of a 'consent' to the search as a condition of employment." *National Federation of Federal Employees v. Weinberger*, 818 F.2d 935, 943 (D.C.Cir.1987). Clearly, an applicant has some expectation of privacy; in applying for a job he does not thereby consent to, for example, a warrantless search of his home.

However, as the court in *Weinberger* also stated, "[a]dvance notice of the employer's condition ... may be taken into account as one of the factors relevant to the extent of the employee's legitimate expectation of privacy." *Id.* See also *Von Raab*, 109 S.Ct. at 1384 n. 2.

In *Harmon*, the Court of Appeals indicated that privacy concerns may be greater for a job holder facing random testing than for a job applicant facing mandatory screening, noting that an incumbent may lose her job if she declines testing, whereas a job applicant would only forego an opportunity. 878 F.2d at 484. Although the Court concluded that the same legal analysis was appropriate whether dealing with mandatory testing of employees applying for transfer, as in *Von Raab*, or dealing with random incumbent employee testing, it concluded that the random nature of the testing might "tip the scales" in a "particularly close case." 878 F.2d at 484.[3]

In light of the clear rejection of the government interests at issue here, this is not such a close case.[4]

4. In one recent case where the government invoked legitimate safety concerns, the applicant/employee distinction did tip the scales; Judge Thomas F. Hogan of this Court held that across-the-board Coast Guard pre-employment testing of certain merchant marine applicants was reasonable, but random testing of incumbents in those positions was not. *Transportation Institute*, 727 F.Supp. at 654–55; *see also Transportation Institute v. United States Coast Guard*, Civil Action Nos. 88–3429, 89–1519 (D.D.C. August 3, 1989) (prior opinion dealing with preliminary injunction). However, Judge Hogan noted that physical examinations and drug testing were widespread in the heavily-regulated maritime industry and that the testing of applicants was "akin to procedures encountered

Nor does the "opportunity to observe" factor, held in *Harmon* to be "surely one element to be weighed in the balance," 878 F.2d at 489, provide a sufficient basis for treating an applicant differently than an incumbent Antitrust Division attorney. In rejecting the Department's attempt to assure the integrity of its processes and a drug-free work place, the Court in *Harmon*, contrasting Justice Department employees with Customs Service workers, commented, "DOJ employees ... work in 'traditional office environments,' in which drug use is, presumably, more easily detected by means other than urine testing." *Id.* This observation comparing employees doing dangerous field work with office workers is pertinent to analyzing the case of an Antitrust Division attorney applicant such as Willner.

The declaration of Thomas D. King, Executive Director of the Antitrust Division, describes in detail the pre-employment screening process applicable to new attorneys like Willner employed by that Division following tentative selection. An "extremely thorough" background investigation is carried out which "includes searching inquiry into numerous aspects of the applicant's personal life ... including any past use of illegal drugs." The investigation includes fingerprinting, a detailed questionnaire,[5] a 15–year residence disclosure, employment, travel, medical and mental treatment records, police records, financial and tax data, and much else. This is supplemented by an FBI neighborhood check.

Surely this process is as likely to uncover any applicant reasonably suspected of hav-

ing a drug problem as presumably occurs in a traditional office setting.[6]

The constitutional right of any citizen not to be searched without a reasonable basis of individualized suspicion is basic to our freedom. Preservation of this right was crucial to the creation of our form of government when we revolted from a system that failed to honor it. If a serious problem arises there is often a temptation to solve it by relaxing Fourth Amendment protections. Just as a beautiful sand dune crumbles if continuously eroded by ocean waves, so will this essential, precious right become a victim if it is modified at times of stress. Presumably it was this concern that led the Court of Appeals to take such a rigid position in *Harmon*, by which this Court is bound.

There is no recognized legitimate ground shown for compelling a drug test search of persons in Willner's situation. The Court holds that the requirement compelling all attorneys accepted for employment in the Department's Antitrust Division to submit to a pre-screening urine drug test in the absence of any basis for individualized suspicion of drug use offends the Fourth Amendment and is invalid as applied to Willner.[7]

■ Willner lacks standing to challenge all pre-employment screening by drug testing of all new Department of Justice or OBD employees. The duties and/or circumstances pertaining to some prospective employees may be found to be sufficiently sensitive or involved in public safety to establish a compelling need for initial drug testing, as might the lack of alternative

in the context of a regular physical examination." 727 F.Supp. at 655 (citing *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). By contrast, pre-employment physical examinations are not required of Justice Department applicants.

5. Antitrust Division attorney applicants, regardless of the nature of the position sought, must complete Standard Form 86, entitled "Questionnaire for Sensitive Positions," which is widely used throughout the government.

6. Supplementing, but not essential to, Willner's position is the fact that he, unlike many other

entering Justice Department attorneys, comes to the job not directly from school but after a number of years of steady, full-time employment with a readily-accessible local employer. There was a substantial opportunity to observe his habits and any evidence of drug use at that job.

7. No useful purpose would be served by delaying entry of judgment for Willner. *See Kennedy v. Whitehurst,* 509 F.Supp. 226 (D.D.C.1981), *aff'd,* 690 F.2d 951 (D.C.Cir.1982); Fed.R.Civ.P. 65(a)(2).

**6**

means of obtaining reliable background information. *See Harmon*, 878 F.2d at 487.

An appropriate Order is attached.

### ORDER

Upon consideration of plaintiff's motion for preliminary injunction, the opposition thereto, defendants' motion to dismiss or in the alternative for summary judgment, and the entire record herein, the Court having given notice to the parties at the preliminary injunction hearing that the issues being presented might be appropriate for determination on the merits pursuant to Fed. R.Civ.P. 65(a)(2), and the Court having determined that there are no genuine issues of material fact or reasons for further proceedings, it is hereby

ORDERED that defendants' motion to dismiss or in the alternative for summary judgment is denied; and it is further

ORDERED that plaintiff's motion for preliminary injunction is moot; and it is further

ORDERED that judgment is entered for the plaintiff pursuant to Fed.R.Civ.P. 65(a)(2); and it is further

ORDERED that the Department of Justice Offices, Boards and Divisions drug testing plan ("OBD revised plan"), as applied to plaintiff, violates his rights under the Fourth Amendment to the United States Constitution; and it is further

ORDERED that, in the absence of reasonable grounds for individualized suspicion of drug involvement, defendants are hereby permanently enjoined from implementing or enforcing the requirements of pre-employment drug testing, pursuant to the OBD revised plan or otherwise, of attorneys applying for employment with the Antitrust Division, unless the attorney applicant will be required immediately to have access to Top Secret classified information; and it is further

ORDERED that defendants are hereby permanently enjoined from taking any adverse action against plaintiff by reason of his participation in this litigation or his refusal to take a urine test during pre-employment screening of his application for employment.