EDWARD STERNAD, APPELLEE, v. OMAHA & COUNCIL BLUFFS
STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 17, 1920. No. 20922.

1. **Master and Servant: ASSAULT: SCOPE OF EMPLOYMENT: QUESTION
FOR JURY.** When a servant, while in the discharge of the duties
for which he was employed, commits an unprovoked assault upon
another, the question whether he was acting within the scope of
his employment or outside of it to effect some purpose of his own,
is generally a question of fact for a jury, and its verdict is con-
clusive, provided there be sufficient testimony to support it.

2. ——: ——: **LIABILITY OF MASTER.** The master is responsible
for the act of his servant committed in the scope of the employ-
ment, even where he departs from his instructions, acts wrongfully,
wilfully, or illegally.

APPEAL from the district court for Douglas county:
ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*John L. Webster* and *William M. Burton,* for appel-
lant.

*W. J. Connell, contra.*

TIBBETS, C.

This is an action by the plaintiff, by his mother and
next friend, to recover from the defendant damages in-
flicted upon the plaintiff by an employee of defendant.
Verdict for plaintiff for the sum of $1,000, on which
about 16 years of age. Defendant was and is a corpora-
Plaintiff was, at the commencement of this action,
judgment was rendered. Defendant appeals.
tion owning and operating a street railway in the city
of Omaha, Nebraska. On March 9, 1917, about 9 o'clock
p. m., one of the cars of defendant was proceeding on
Thirteenth street of said city near its intersection with
Dominion street. The plaintiff was running to catch the
car for the purpose of becoming a passenger thereon,
when the conductor on the car fired a revolver at plain-

tiff, the bullet striking the plaintiff in the right arm and wounding him. There had been on different occasions collection of boys at said point who had frequently annoyed the employees of the defendant by jumping on and off cars without any intention of becoming passengers thereon, disconnecting the trolley pole from the power line, and in various ways sought to annoy the employees of defendant and hinder and delay the operation of the cars, and especially had been annoying the conductor who fired the shot that wounded plaintiff.

There is practically no controversy in the evidence, and the only questions to be determined are: Was the verdict based upon sufficient evidence? and, further, was the employee acting within the scope of his employment in shooting plaintiff?

The evidence is conclusive that the person who fired the shot was the conductor on the defendant's car, that the bullet he fired wounded plaintiff, and that the assault was unprovoked and unjustified. These facts are fully substantiated by the record, and the jury by their verdict so found. Counsel for defendant, however, maintains that the firing upon the plaintiff by the conductor was not within the scope of his employment, and cites numerous authorities to maintain his position. The record discloses that this particular conductor had been annoyed by the persistent and repeated acts of boys, at or near where the assault occurred, in jumping on the car and removing the connection between the line fur- periors. In all of these matters he is acting within the nishing the power and the car. We think it is a reasonable conclusion that the duties of a conductor are to keep management of the car subject to the orders of his su- protect passengers, collect fares, and have the general the connection made, keep trespassers from the car, scope of his employment. It will be conceded that in the instant case the conductor was not expected or directed by the company to shoot down an inoffensive boy in the street for no better reason than that he suspected

the boy intended to interfere with the operation of the car, or had interfered with it in the past, or sought to annoy him in the discharge of his duties.

In protecting the property and operation thereof of his employers, he would be entitled to exercise such force and use such means as was necessary and the occasion demanded, and it was for that purpose he was placed in charge of the car. In shooting the plaintiff he was carrying out what was his mistaken idea of the necessary force to be used. The shooting was not only done while the conductor was in the employ of the company, but also while he was in the active discharge of the duties for which he was employed, and in charge of property it was his duty to protect. In the instant case the conduct of the conductor is not so indicative of malice, but of temperament. The cases cited by defendant are in some respect convincing of the contentions of defendant, but a review of the authorities cited demonstrates that the conclusions arrived at do not depend so much on the principles therein involved as upon the facts in each particular case. It is largely a question of fact for the jury to determine whether an employee who commits a tort is acting within the scope of his employment. In the case of *Nesbit v. Chicago, R. I. & P. R. Co.*, 163 Ia. 39, 50, the court held: "Whether the servant was at the time in question acting within the scope of his employment or outside of it to effect some purpose of his own is generally a question of fact for a jury, and its verdict is conclusive, provided there be any substantial testimony to support it. *Mott v. Consumers' Ice Co.*, 73 N. Y. 543; *Cohen v. Dry Dock E. B. & B. R. Co.*, 69 N. Y. 170; *Schulte v. Holliday*, 54 Mich. 73."

In the case of *Rounds v. Delaware, L. & W. R. Co.*, 64 N. Y. 129, 21 Am. Rep. 597, Judge Andrews, writing the opinion, says: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack

of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another.''

The New York courts are committed to the following rule contained in the opinion in the case of *Hewson v. Interurban Street R. Co.*, 88 N. Y. Supp. 816: ''It is now well settled that the master is responsible for the act of his servant committed in the scope of the employment, even where he departs from his instructions, acts wrongfully, wilfully, or illegally, and even where the act is committed upon a trespasser.'' The rule therein declared is supported by numerous authorities.

In the case of *Burnham v. Elk Laundry Co.*, 121 Minn. 1, it was held: ''In an action against the principal for an assault and battery committed by his agent upon plaintiff, it is held that the question whether the assault so committed was in the course of the agent's employment was one of fact and properly submitted to the jury.''

The chief justice in the opinion says: ''Upon the question as to what wrongful acts, committed by an agent, come within the 'scope or course of the agent's employment,' the authorities are in hopeless confusion. It is not at all difficult to find conflicting decisions from different courts upon the same, or substantially the same, state of facts. The old rule by which the question was made to turn upon a strict application of legal principles has undergone changes in later decisions, and the question under the modern trend of opinion resolves itself into one of fact, or mixed law and fact. Chief Justice Start, in referring to the subject in the case of *McLaughlin v. Cloquet Tie & Post Co.*, 119 Minn. 454, said: 'While the abstract rule is well settled, some confusion has arisen in applying it concretely, especially with reference to the meaning of the term ''the course of and within the scope of his employment.'' No hard

and fast definition of the term, applicable to all cases, can be given. Some of the earlier cases in this court seemingly applied the rule with literal exactness; but the tendency of the later cases is to give the rule a more liberal and practical application, especially in cases where the business of the master intrusted to his servants involved a duty owed by him to the public.' *Penas v. Chicago, M. & St. P. R. Co.*, 112 Minn. 203, 30 L. R. A. n. s. 627, 140 Am. St. Rep. 470; *Theisen v. Porter,* 56 Minn. 555; *Anderson v. International Harvester Co.,* 104 Minn. 49, and other authorities cited by the chief justice in the *McLaughlin* case."

The *Burnham* and *Hewson* cases are in accord with the decisions of this court, and especially in the case of *Chicago, R. I. & P. R. Co. v. Kerr,* 74 Neb. 1, wherein this court held: "The master is liable for the acts of his servant within the general scope of his employment while about his master's business, though the act be negligent, wanton, wilful, or malicious."

The case of *Allertz v. Hankins,* 102 Neb. 202, is in no wise in conflict with the *Kerr* case, and the *Allertz* case holds that the question whether the servant had some purpose of his own, and not connected with his employment, in doing the act was a question of fact for the jury.

As has been stated, on the question as to what wrongful acts committed by a servant come within the scope or course of the servant's employment, the authorities are in hopeless confusion. In the instant case the conductor undoubtedly supposed the plaintiff was endeavoring to reach the car to perpetrate some mischief, it was his duty and within the scope of his employment to prevent the same, and in his misjudged idea of the extent to which he might go he shot and wounded the plaintiff. Whether his action was within the scope of his employment was a question of fact for the jury, who by their verdict determined he was so acting. We find no error in the record, and recommend that the judgment be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.