Jim RITCHIE; Mike Truhlicka; Gary Wergin; Louis Burchfield; Charles Jaudon; Scott Kobza; Mitch Gabel; Don Gehle, Appellants,

v.

WALKER MANUFACTURING COMPANY, Appellee.

No. 91–1307.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1991.

Decided May 11, 1992.

Rehearing Denied May 21, 1992.

---

Patricia A. Knapp, Lincoln, Neb., argued (Thom K. Cope, on brief), for appellants.

William R. Sullivan, Jr., Chicago, Ill., argued (Carl E. Johnson and Kathryn M. Hartrick, Chicago, Ill., and Neal Stenberg, Lincoln, Neb., on brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

After being terminated from their jobs for failing a drug test, Jim Ritchie and several other employees (collectively referred to as "Ritchie") of Walker Manufacturing Company ("Walker") commenced this action in Nebraska state court. In his complaint, Ritchie alleged that his termination violated his employment contract as well as state and federal constitutional and statutory provisions. Walker removed the case to federal court pursuant to 28 U.S.C. § 1441.[1] Subsequent to removal, the district court granted Walker's motion to dismiss the plaintiffs' complaint under Fed. R.Civ.Pro. 12(b)(6) for failure to state a claim upon which relief can be granted. Ritchie appeals. We affirm.

## BACKGROUND

Ritchie's five count complaint alleged that 1) Walker breached its employment contract with him, 2) Walker violated Nebraska's and the United States' public policies against unreasonable search and seizures as embodied in the Nebraska and United States Constitutions, 3) Walker violated Nebraska's statutory right to privacy, 4) Walker deprived Ritchie of rights secured by the federal Constitution and Neb. Rev.Stat. § 20–148, and 5) Walker deprived Ritchie of rights secured by the Nebraska Constitution and section 20–148. The district court dismissed each of these claims pursuant to Rule 12(b)(6).

With respect to Ritchie's employment contract claim, the district court focused on two provisions of Walker's alcohol and drug abuse program, which provide:

Employees will be subject to discharge in connection with this policy for:

. . . . .

2. Being under the influence of alcohol or drugs on company property or on company time;

3. Selling or using alcohol or drugs on company property or on company time;

4. Failure to consent to a drug or alcohol test when there is probable cause; and/or

5. Conviction of a drug related crime.

and

The company may require a blood test, urinalysis, or other drug/alcohol screening of persons suspected of using or being under the influence of a drug or alcohol.... Positive results on, or failure to consent to a drug or alcohol test may result in discharge.

Ritchie did not contest Walker's conclusion that he violated the company's drug policy. Accordingly, the district court ruled that Ritchie could not prevail on a breach of contract claim.

The district court next dismissed Ritchie's public policy claim. According to the district court, Nebraska's public policy anticipates and condones "the discharge of employees who use drugs or refuse to consent to a test to detect such use", *see* Neb.Rev.Stat. §§ 48–1903 and 48–1910 (1988), and "[t]herefore, the conduct of [Walker] appears to be consistent with, rather than contrary to, a clear legislative mandate of public policy." As for constitutionally-inspired public policy, the district court held that the federal and state constitutions only prohibit state actors from conducting unreasonable search and seizures and thus did not apply to Walker, a private employer. *See Jackson v. Metropolitan*

---

1. Walker removed the action on several grounds: 1) complete diversity of citizenship existed between the plaintiffs, who were all citizens of Nebraska, and the defendant, which is incorporated in Delaware and has its principal place of business in Wisconsin; 2) the federal district court had pendent jurisdiction of Ritchie's state law claims because Ritchie's federal claims and state claims derive from a common nucleus of operative fact; and 3) because Ritchie seeks relief under the United States Constitution, the district court had federal question jurisdiction.

*Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452, 42 L.Ed.2d 477 (1974); *State v. Jolitz,* 231 Neb. 254, 435 N.W.2d 907, 911–12 (1989).

The district court then decided that Nebraska's statutory right to privacy, *see* Neb.Rev.Stat. § 20–203 (1988), did not apply to a bodily invasion. The district court reached this conclusion based on a literal reading of the statute, which protects a "person in his or her place of solitude or seclusion," but which does not equate such protection with ensuring bodily integrity. *Id.*

The district court finally ruled that neither Ritchie's fourth nor fifth causes of action could survive a 12(b)(6) motion for dismissal. According to the district court, in order for Ritchie to recover damages for violating his federal and state constitutional rights, there must be state action, which is missing here. *See Jackson,* 419 U.S. at 349, 95 S.Ct. at 452; *Jolitz,* 435 N.W.2d at 911–12.[2]

## DISCUSSION

In reviewing a 12(b)(6) dismissal,

we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### A. *Constitutional Causes of Action*

Ritchie's second cause of action alleges that his discharge violated public policy. *See Schriner v. Meginnis Ford Square Ltd.,* 228 Neb. 85, 421 N.W.2d 755, 759

(1988) (recognizing public policy exception to the employment-at-will rule). More specifically, he contends that Walker violated the federal and state constitutional prohibitions against unreasonable search and seizures[3] in contradiction of a series of decisions holding drug tests unconstitutional. *See e.g., Willner v. Thornburgh,* 738 F.Supp. 1 (D.D.C.1990); *Beattie v. City of St. Petersburg Beach,* 733 F.Supp. 1455 (M.D.Fla.1990).

In relying on these cases and the public policy that emanates from them, Ritchie fails to note that each of the cases involves state action, which is not present here. Without state action, Ritchie cannot claim a violation of the federal fourth amendment. *See Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 614, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989). The Nebraska Constitution's prohibition against unreasonable search and seizures is subject to the same limitation. *See Jolitz,* 435 N.W.2d at 911–12. Accordingly, the district court correctly dismissed Ritchie's second cause of action.

### B. *Statutory Causes of Action*

Ritchie asserts that Nebraska statutory law prohibits private employers in non-sensitive[4] industries from discharging non-sensitive employees with impeccable work records for refusal to take a drug test or for failing to pass a drug test taken under the threat of discharge. We do not believe that Nebraska statutory law prohibits such discharges if the employer has probable cause to believe that the employees are using or under the influence of drugs on company property or on company time, as was the case here.[5]

---

**2.** Ritchie appeals the dismissal of counts two through five but does not appeal the dismissal of the first count. Ritchie also appeals the district court's refusal to certify the question of whether Neb.Rev.Stat. § 20–148 creates a cause of action for constitutional violations by private employers. After reviewing the certification issue, we affirm the district court's decision. *See Hatfield v. Bishop Clarkson Memorial Hosp.,* 701 F.2d 1266, 1267–68 (8th Cir.1983).

**3.** Article 1, section 7 of the Nebraska Constitution mirrors the federal fourth amendment.

**4.** "Non-sensitive" summarizes Ritchie's claim that he did not have special duties of particular consequence and that he was not involved in jobs affecting public safety. *See generally Skinner,* 489 U.S. at 606–608, 109 S.Ct. at 1407–1408 (discussing relevance of job requirements).

**5.** A Walker-hired investigator detected Ritchie's drug use and reported it to the company. Ritchie has not contested the investigator's conclusion that he violated Walker's drug policy.

Three sets of Nebraska statutes guide this conclusion: Neb.Rev.Stat. §§ 20–148, 20–201 to 20–211, and 48–1901 to 48–1910 (1988).

### 1. *Section 20–148*

Ritchie's fourth cause of action claims that section 20–148 entitles him to sue Walker for depriving him of rights recognized under the first, fourth, fifth and fourteenth amendments to the United States Constitution. Ritchie's fifth cause of action similarly alleges that section 20–148 entitles him to sue Walker for infringing analogous rights under the Nebraska constitution.[6] The district court dismissed these causes of action based on the absence of state action.

Section 20–148 reads as follows:

(1) Any person or company, as defined in section 49–801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such person.

Neb.Rev.Stat. § 20–148 (1988). On its face, this statute would appear to support Ritchie's claims. It does not require state action as a predicate element for claiming a constitutional deprivation. It clearly states that "any ... company ... who subjects ... any citizen of this state ... to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action...."

Despite the apparent clarity of this statute, for several reasons, we agree with the district court's dismissal of Ritchie's claims under section 20–148. *First*, in the words of the district court,

this section does not purport to create new causes of action or rights but merely provides a civil avenue of recovery for violations of constitutional or statutory civil rights provisions. Section 20–148 does not create a civil remedy for conduct which would violate the *concept* or *spirit* of a constitutional or statutory provision *but for* the absence of a jurisdictional fact. Rather it provides a civil remedy for violations of constitutional or statutory right. Therefore, the plaintiffs can succeed on these causes of action only if the pertinent constitution[al] provisions were actually violated.

*Jim Ritchie, et al. v. Walker Mfg. Co.*, No. CV90–L–329 (D.Neb. Jan. 4, 1991), 1991 WL 337615 (emphasis in original). *Second*, as previously discussed and as the above statement implies, absent state action, Ritchie's constitutional rights have not been violated. *Third* and perhaps most importantly, the statute's legislative history indicates that its purpose was limited. Summarizing section 20–148, its sponsor explained that "[t]he bill is designed to allow people who have complaints of discrimination to go into court rather than being compelled to go only through the Equal Opportunity Commission." Floor Debate, L.B. 66, Judiciary Committee, 86th Leg., 1st Sess. 434–35 (Feb. 11, 1977). Thus, the intent of section 20–148 is to allow plain-

---

**6.** Article I, section 1 of the Nebraska Constitution states:

All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty, the pursuit of happiness, and the right to keep and bear arms for security or defense of self, family, home, and others, and for lawful common defense, hunting, recreational use, and all other lawful purposes, and such rights shall not be denied, or infringed upon by the state or any subdivision thereof. To secure these rights, and the protection of property, governments are instituted among people, de-

priving their just powers from the consent of the governed.

Article I, section 3 provides:
No person shall be deprived of life, liberty, or property, without due process of law.

Article I, section 7 states:
The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

tiffs to bypass the time-consuming administrative procedures of the Equal Employment Opportunity Commission. This legislative history demonstrates that the statute does not sweep as far as it first appears. Indeed, section 20–148 merely usurps the jurisdiction of the EEOC, which by statute already entertains claims charging private discrimination.[7] Conversely, no analogous state or federal statute reaches the private search and seizure involved here. We thus agree with the district court's conclusion that section 20–148 does not apply to drug-testing by private employers.

### 2. *Sections 20–201 to 20–211*

While Ritchie cites a block of statutes to support his right to privacy claim, we find that the only relevant one is Neb.Rev.Stat. § 20–203. That statute provides:

> Any person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy.

Although we agree with the district court that this statute does not provide Ritchie's with a sustainable cause of action, our reasoning differs from that of the district court.

Noting that section 20–203 "specifically limits the tort to a *place*" and that no Nebraska law defines a person's body as a "place," the district court ruled that section 20–203 does not apply to drug testing. We do not agree with this analysis.

█ The legislative history behind section 20–203 specifically recognized offices as a place of solitude or seclusion:

This section is premised upon a place or a physical location to which one is reasonably entitled to a sense of privacy, a home, an office, a restroom, a telephone booth that you are occupying or the like and it says that where there is a physical intrusion into your solitude and seclusion you may sue for damages.

Floor Debates, L.B. 394, Neb.Leg., 86th Sess. 2368 (March 29, 1979). Nebraska's statutory right of privacy therefore extends to Ritchie's place of employment, and requiring an employee to submit to drug-testing certainly infringes upon a worker's sense of privacy.[8] To recover under section 20–203, however, the intrusion upon Ritchie's privacy must "be highly offensive to a reasonable person." Neb.Rev.Stat. § 20–203. This is not the case here.

To detect drug use among its employees, Walker hired an investigator, who identified Ritchie as using or being under the influence of drugs on company property or company time. In other words, before requiring Ritchie to take a drug test, Walker reasonably believed that he was violating its drug policy. This approach conformed with Walker's drug-testing policy which specifically limits drug-testing to employees who are "suspected of using or being under the influence of a drug."

Walker's drug-testing policy and its actions to discharge employees who are using or under the influence of drugs on company property or on company time reflect Nebraska law, which expressly permits the dismissal of an employee who fails a drug test and of "[a]ny employee who refuses the lawful directive of an employer to provide a body fluid." *See* Neb.Rev.Stat. §§ 48–1903 and 48–1910 (1988). Indeed, Section 48–1903 [9] details the drug-testing

---

**7.** *See* 42 U.S.C. §§ 2000e–2 through 2000e–5 (1988).

**8.** As the 5th Circuit explained:

There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom. *National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 175 (5th Cir.1987), *aff'd* and

*rev'd*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

**9.** This section provides:

Any results of any test performed on the body fluid or breath specimen of an employee, as directed by the employer, to determine the presence of drugs or alcohol shall not be used to deny any continued employment or in any disciplinary or administrative action unless the following requirements are met:

(1) A positive finding of drugs by preliminary screening procedures has been subsequently confirmed by gas chromatography-

procedures which an employer must follow before disciplining an employee for drug use. Ritchie does not contend that Walker violated these procedures. Thus, not only did Walker's drug-testing policy incorporate the probable cause typically required to justify an invasion of an individual's liberty, it also conformed with Nebraska's statutorily-imposed drug-testing procedures. Given these facts, Walker's drug-testing of Ritchie cannot be considered unreasonable. Therefore, Ritchie's claim that Walker violated his right of privacy cannot survive 12(b)(6) review.

Accordingly, we affirm the district court's dismissal of Ritchie's claims.

mass spectrometry or other scientific testing technique which has been or may be approved by the department; and

(2) A positive finding of alcohol by preliminary screening procedures is subsequently confirmed by either;

(a) Gas chromatography with a flame ionization detector or other scientific testing technique which has been or may be approved by the department; or

(b) A breath-testing device operated by a breath-testing-device operator. Nothing in this subdivision shall be construed to preclude an employee from immediately requesting further confirmation of any breath-testing results by a blood sample if the employee voluntarily submits to give a blood sample taken by qualified medical personnel in accordance with the rules and regulations adopted and promulgated by the department. If the confirmatory blood test results do not confirm a violation of the employer's work rules, any disciplinary or administrative action shall be rescinded.

Except for a confirmatory breath test as provided in subdivision (2)(b) of this section, all confirmatory tests shall be performed by a clinic, hospital, or laboratory which is licensed pursuant to the federal Clinical Laboratories Improvement Act of 1967, 42 U.S.C. 263a, or which is accredited by the College of American Pathologists.