MEMORANDUM OPINION
 

 STROM, Senior District Judge.
 

 This matter is before the Court on the defendants’ motions to dismiss (Filing Nos. 20 and 25). After careful review of the motions, briefs, exhibits, and applicable law, the Court finds that (1) the plaintiff did exhaust her administrative remedies with respect to her sexual harassment claim; (2) defendant O’Leary cannot be held individually liable under Title VII or Neb.Rev.Stat. § 20-148; (3) the Court may properly exercise supplemental jurisdiction over the state claims; and (4) the plaintiff did- allege facts sufficient to state a cause of action against the corporate defendants for intentional infliction of emotional distress.
 

 FACTS
 

 On September 16, 1992, April Karstens began working as a sales and marketing representative for Infinational Technologies, Inc. (Infinational).
 
 [1]
 
 On or about February 8, 1993, Karstens and John O’Leary, a sales and marketing representative for Gamco,
 
 [2]
 
 were sent on a business trip to Minnesota. Karstens alleges that she was instructed by her supervisor, Scott Henneman, to travel under O’Leary’s direction and control.
 

 During the trip to Minnesota, O’Leary allegedly subjected Karstens to offensive sexual comments, language, touching, and lewd behavior. Karstens alleges that she complained to management, but that management did not take action to remedy the situation. In addition, Karstens alleges that on March 5, 1993, as a direct and proximate result of her complaint to management, she was fired.
 

 On or about August 31, 1993, Karstens filed a charge of employment discrimination based on sex with the Equal Employment Opportunity Commission (EEOC). Subsequently, the EEOC issued a right to sue letter, and the plaintiff filed suit. The plaintiffs judicial complaint alleges (1) both sexual
 
 *1435
 
 harassment and retaliation in violation of Title VII; (2) violation of Neb.Rev.Stat. § 20-148; and (3) intentional infliction of emotional distress.
 

 EXHAUSTION OF ADMINISTRATIVE REMEDIES
 

 The defendants contend that the plaintiffs sexual harassment claim should be dismissed because the plaintiff did not exhaust her administrative remedies by presenting that claim to the EEOC. “As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge.”
 
 Cheek v. Western and Southern Life Ins. Co.,
 
 31 F.3d 497, 500 (7th Cir.1994). This rule is a condition precedent to filing suit; it is not a jurisdictional rule.
 
 Id. citing Zipes v. Trans World Airlines, Inc.,
 
 455 U.S. 385, 392, 102 S.Ct. 1127, 1131-32, 71 L.Ed.2d 234 (1982).
 

 (a) Standard of Review
 

 Matters outside the scope of the pleadings were presented in support of and in opposition to the portion of the motions relating to exhaustion of remedies. Therefore, the Court, applying Fed.R.Civ.P. 12(b), will treat these portions of the motions as motions for partial summary judgment and will dispose of them as provided in Fed. R.Civ.P. 56.
 

 Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In order for the moving party to prevail, it must demonstrate to the court that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). A fact is material only when its resolution affects the outcome of the case.
 
 Anderson,
 
 477 U.S. at 248, 106 S.Ct. at 2510. A material issue is genuine if it has any real basis in the record.
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the Court must view all evidence and inferences in the light most favorable to the non-moving party.
 
 Anderson,
 
 477 U.S. at 250, 106 S.Ct. at 2511. However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.
 
 Celotex,
 
 477 U.S. at 324, 106 S.Ct. at 2553. And if the plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial.
 
 Id.
 
 at 322-23, 106 S.Ct. at 2552-53. The Court reviews the portions of the defendants’ motions relating to exhaustion of remedies in light of the foregoing standard of review.
 

 (b) Exhaustion of Administrative Remedies
 

 Timely filing a charge of discrimination with the EEOC is a prerequisite to the later commencement of a civil action in federal court.
 
 Cobb v. Stringer,
 
 850 F.2d 356, 358 (8th Cir.1988). The purpose of filing the charge is to provide the EEOC with an opportunity to investigate and attempt to resolve the controversy through conciliation before permitting the aggrieved party to pursue a lawsuit.
 
 Id.
 
 at 359. To exhaust her remedies, not only must a Title VII plaintiff timely file her charges with the EEOC, but she must also receive a “right to sue” letter from the EEOC.
 
 Shannon v. Ford Motor Co.,
 
 72 F.3d 678, 684 (8th Cir.1996).
 

 It is uncontroverted that the plaintiff followed these steps and exhausted her remedies with respect to her retaliation claim; she filed a charge with the EEOC and received a right to sue letter. However, the defendants argue that the plaintiff has not exhausted all of her administrative remedies with respect to her sexual harassment claim.
 

 
 *1436
 
 “Exhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices.”
 
 Tart v. Hill Behan Lumber Co.,
 
 31 F.3d 668, 671 (8th Cir.1994)
 
 citing Cobb,
 
 850 F.2d at 359 (8th Cir.1988). Exhaustion serves the purpose of
 

 giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and employer. Good faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires.
 

 Hargens v. U.S. Dept. of Agriculture,
 
 865 F.Supp. 1314, 1324 (N.D.Iowa 1994).
 

 In this ease, on the Notice of Charge of Discrimination, two boxes, one entitled “Sex” and the other “Retaliation,” are cheeked as the basis for discrimination. Also, on the Charge of Discrimination, the box entitled “Sex” is checked as the cause of the discrimination against the plaintiff. In the “Particulars” section of the charge, the plaintiff states:
 

 On March 5, 1993, Infinational Technologies, Inc. discharged me from my position as a Sales and Marketing Representative. I believe Infinational Technologies, Inc. unlawfully discharged me due to my Sex and Retaliation because:
 

 1. I am female.
 

 2. From September, 1992 through November, 1992, I worked forty (40) hours per week, but received part-time pay, in an attempt to assist Infinational Technologies, Inc. in getting the business off the ground. November, 1992, I began working full time.
 

 4.
 
 [3]
 
 After I complained, male management employees became very cold and indifferent towards me.
 

 5. After I complained of the sexual harassment, Mr. Henneman avoided meeting with me to discuss work related matters.
 

 6. On or about February, 1993, Mr. Henneman reprimanded me for reporting to work a half hour late.
 

 7. Infinational Technologies, Inc. did not reprimand or take issue with the reporting time of a male Sales and Marketing Representative, who reporteddto [sic] work after 8:30 a.m. on numerous occasions.
 

 8. On March 5,1993, Mr. Henneman told me I was being discharged for violation of company policies and inadequate job performance. Mr. Henneman sited [sic] alleged infractions from November and December, 1992, but apparently was not an issue, until I complained of the sexual harassment [sic],
 

 9. Prior to complaining to Respondent of sexual harassment, Mr. Henneman and other company representatives often complimented me on my performance and dedication.
 

 In her charge, Karstens did not explicitly allege that she was sexually harassed and support that allegation with facts. Rather, it appears that the references to sexual harassment in Paragraphs 5, 8 and 9 are made while outlining the events leading up to her discharge. Even when construing the EEOC charge liberally, the Court cannot make something out of nothing.
 

 However, in addition to having jurisdiction over claims explicitly included in the EEOC charge, the Court has jurisdiction over claims that are “like or reasonably related” to the allegations in the plaintiffs EEOC complaint.
 
 Shannon,
 
 72 F.3d at 684; see
 
 also, Tart,
 
 31 F.3d at 671. “[T]he sweep of any subsequent judicial complaint may be as broad as the scope of the EEOC ‘investigation which could reasonably be expected to grow out of the charge of discrimination.’ ”
 
 Cobb,
 
 850 F.2d at 359. “[T]he appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention.”
 
 Rush v. McDonald’s Corp.,
 
 966
 
 *1437
 
 F.2d 1104, 1112 (7th Cir.1992);
 
 see also, Hargens,
 
 865 F.Supp. at 1326 (“Where the plaintiffs statements to the EEOC presented a sufficient predicate upon which one reasonably would expect the agency to investigate a claim even if not raised in the complaint and actually investigated, the claim is not barred from judicial consideration”). The Court concludes that the facts brought to the EEOC’s attention in the charge present a sufficient predicate upon which one reasonably would expect the agency to investigate a sexual harassment claim.
 

 Because both the “Sex” and “Retaliation” boxes were checked on the Notice of Discrimination and the box indicating sex as the cause of discrimination was cheeked on the Charge of Discrimination, the EEOC and the defendants had notice that the plaintiff alleged both sex discrimination and retaliation. Moreover, the EEOC charge raises the issue of sexual harassment in paragraphs 5, 8 and 9 plainly giving notice that Karstens believes that she was sexually harassed somewhere between November of 1992 and March of 1993. The language of the charge, reasonably read, identifies the existence of a sexual harassment elaim temporally related to the retaliation claim. It is reasonable to infer a sexual harassment claim from these allegations.
 

 Because the EEOC could reasonably be expected to investigate the sexual harassment claim based upon the allegations in the administrative charge, the Court finds that the plaintiff exhausted her administrative remedies. This result is reached even though the EEOC never mentioned sexual harassment in its Determination other than to cite it as an impetus for the alleged retaliation. As other courts have noted, the proper inquiry is not whether the EEOC actually considered the claim, but whether the claim was brought to its attention.
 
 [4]
 
 The EEOC’s failure to address the sexual harassment claim in its Determination is insufficient to bar the plaintiff from pursuing that claim now.
 
 [5]
 

 [6]
 
 The evidence demonstrates that the plaintiff made a good faith effort to cooperate with the EEOC and provide all relevant, available information.
 

 It is a reasonable expectation that the scope of the EEOC investigation would include incidents of sexual harassment based upon Karstens’ EEOC charge. Thus, the goals behind the statutory requirement of prior resort to administrative relief would not be frustrated if Karstens’ claim of sexual harassment is permitted to continue in this litigation. For all of the foregoing reasons, the Court finds that Karstens did exhaust all of her administrative remedies and preserved her Title VII sexual harassment claim. The defendants’ motions will be denied.
 

 INDIVIDUAL LIABILITY UNDER TITLE VII AND NEB.REV.STAT. § 20-148
 

 A second issue before the Court is whether O’Leary can be held individually liable under Title VII and Neb.Rev.Stat. § 20-148 (1991).
 

 (a) Standard of Review
 

 In considering a motion to dismiss a complaint under Rule 12(b)(6), well
 
 *1438
 
 pled allegations are considered to be true and are viewed in the light most favorable to the plaintiff. The issue in resolving a motion to dismiss is whether the plaintiff is entitled to offer evidence in support of her claim, not whether she will ultimately prevail.
 
 United States v. Aceto Chems. Corp.,
 
 872 F.2d 1373, 1376 (8th Cir.1989). The question is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief.
 
 Jackson Sawmill Co. v. United States,
 
 580 F.2d 302, 306 (8th Cir.1978),
 
 cert. denied,
 
 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). The Court considers all remaining issues raised in the defendants’ motions to dismiss in light of the forgoing standard.
 

 (b) Title VII
 

 In the Eighth Circuit, a nonsupervisory co-employee cannot be held individually liable under Title VII.
 
 Smith v. St. Bernards Regional Medical Center,
 
 19 F.3d 1254 (8th Cir.1994). However, Karstens alleges that O’Leary was more than a nonsupervisory co-employee because she was under his direction and control on the Minnesota trip. The Court finds that even if O’Leary acted in a supervisory capacity, he cannot be held individually liable.
 

 It is true that the Eighth Circuit “has not decided the question of individual employee liability under Title VII when the employee is the plaintiffs supervisor.”
 
 Lenhardt v. Basic Institute of Technology, Inc.,
 
 55 F.3d 377, 380 (8th Cir.1995). However, we agree with defendant O’Leary that, while not deciding the issue in
 
 Lenhardt,
 
 the Eighth Circuit gave a strong indication of how it would rule when faced with the issue.
 
 [6]
 
 After citing the earlier split among the circuits, the Eighth Circuit stated that “the more recent cases reflect a clear consensus on the issue before us: supervisors and other employees cannot be held liable under Title VII in their individual capacities.”
 
 Id.
 
 at 381. “Every circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII.”
 
 Id.
 
 Further, “the scheme that our sister circuits have concluded Congress adopted in Title VII, with liability for unlawful discrimination in the workplace imposed only on the employing entity, is not illogical----”
 
 Id.
 

 This logical reasoning had earlier been adopted by one district court in the Eighth Circuit which held that a supervisor may not be held individually liable for violations of Title VII.
 
 Engle v. Barton County Memorial Hosp.,
 
 864 F.Supp. 118 (W.D.Mo.1994). The
 
 Engle
 
 court’s analysis began by agreeing with the Ninth Circuit that “the purpose of the ‘agent’ provision in § 2000e(b) was only to incorporate
 
 respondeat superior
 
 liability into Title VIII” and that “there is no reason to stretch the liability of individual employees beyond the
 
 respondeat superior
 
 principle.”
 
 Engle,
 
 864 F.Supp. at 120,
 
 citing Miller v. Maxwell’s International, Inc.,
 
 991 F.2d 583, 587 (9th Cir.1993)
 
 cert. denied,
 
 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1993). In addition, the
 
 Engle
 
 court agreed that, because Congress protected small employers from the high cost of litigating discrimination claims by statutorily limiting Title VII liability to entities with fifteen or more employees, Congress likewise did not intend to impose liability on individuals. Further, the
 
 Engle
 
 court agreed that simply because Congress had recently capped the compensatory and punitive damages provisions in Title VII, it was illogical to assume that Congress contemplated individual liability while exempting small employers even though such damages are of a type that an individual can be expected to pay. And finally, the court agreed that violations of Title VII will not go unchecked in the absence of individual liability because, as pointed out by the
 
 Miller
 
 court, “[n]o employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation.”
 
 Id.
 
 Thus, the court concluded that a supervisor may not be held individually liable for violations of Title VII.
 

 This Court agrees with the reasoning of the
 
 Engle
 
 and
 
 Miller
 
 courts and, in light of
 
 Lenhardt,
 
 holds that individuals, whether co-employees or supervisors, cannot be held liable under Title VTI. Therefore,
 
 *1439
 
 the Title VII claim against O’Leary will be dismissed.
 

 (c) Neb.Rev.Stat. § 20-148
 

 The Court agrees with defendant O’Leary that a claim brought pursuant to Neb.Rev.Stat. § 20-148 grants no greater right than the underlying statute upon which the claim is based.
 
 [7]
 
 Therefore, because O’Leary cannot be held individually liable under Title VII, the plaintiffs claim against him brought pursuant to § 20-148 and based on Title VII will also be dismissed.
 

 Section 20-148 provides in part:
 

 (1) Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.
 

 Neb.Rev.Stat. § 20-148 (1991). On its face, this statute seems to support the plaintiffs claim against O’Leary. However, this section is neither as broad nor as clear as it first appears.
 

 The legislative history indicates that § 20-148 was enacted for a specific and limited purpose, that is, “to allow people who have complaints of discrimination to go into court rather than being compelled to go only through the Equal Opportunity Commission.”
 
 Ritchie v. Walker Mfg. Co.,
 
 963 F.2d 1119, 1122 (8th Cir.1992),
 
 citing
 
 Floor Debate, L.B. 66, Judiciary Committee, 86th Leg., 1st Sess. 434-35 (Feb. 11, 1977).
 
 [8]
 
 Based on the legislative history, courts have concluded “that the purpose of § 20-148 is to allow plaintiffs to enforce their constitutional and statutory rights in district court without first having exhausted statutory administrative remedies. Section 20-148 was enacted to provide an alternative remedy for plaintiffs who otherwise would be trapped in bureaucratic backlogs such as the one at [the Nebraska Equal Opportunity Commission].”
 
 Goolsby v. Anderson,
 
 250 Neb. 306, 312, 549 N.W.2d 153 (1996);
 
 see also, Ritchie,
 
 963 F.2d at 1122-23 (“[T]he intent of section 20-148 is to allow plaintiffs to bypass the time-consuming administrative procedures of the Equal Employment Opportunity Commission.”) In light of this limited purpose, one federal district court stated:
 

 [Section 20-148] does not purport to create new causes of action or rights but merely provides a civil avenue of recovery for violations of constitutional or statutory civil rights provisions. Section 20-148 does not create a civil remedy for conduct which would violate the
 
 concept
 
 or
 
 spirit
 
 of
 
 *1440
 
 a constitutional or statutory provision
 
 but for
 
 the absence of a jurisdictional fact. Rather it provides a civil remedy for violations of constitutional or statutory right. Therefore, the plaintiffs can succeed on these causes of action only if the pertinent constitution[al] provisions were actually violated.
 

 See Ritchie,
 
 963 F.2d at 1122. More recently, the Nebraska Supreme Court stated that “§ 20-148 is a procedural statute which does not create any new substantive rights.”
 
 Goolsby v. Anderson,
 
 250 Neb. at 313, 549 N.W.2d at 157.
 

 Thus, despite the language in § 20-148 that “any person or company ... shall be liable,” O’Leary cannot be individually liable under that statute in this case. Nebraska courts do not read that language over the language of the statute underlying the § 20-148 claim because § 20-148 does not create additional rights. For instance, in
 
 Steier v. Crosier Fathers of Hastings, Neb.,
 
 242 Neb. 16, 492 N.W.2d 870 (1992), the Nebraska Supreme Court concluded that the plaintiff could not seek relief under § 20-148 based on violations of the Nebraska Fair Employment Practice Act (Neb.Rev.Stat. § 48-1101-1125) and the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age (Neb.Rev.Stat. § 48-1001-1010) because the employer did not employ the requisite number of employees set forth in either act. Even though there was no question that the defendant was a company as defined in § 20-148, summary judgment was proper because the defendant did not meet the criteria set forth in the acts, and therefore, the terms of the acts did not apply to the plaintiff or the defendant.
 

 Similarly, because Title VIPs employer liability does not extend to individuals or supervisors, Karstens cannot seek relief from O’Leary under § 20-148 based on violations of Title VII. Karstens’ rights under § 20-148 are the same as the rights contained in Title VII. For these reasons, the § 20-148 claim against O’Leary will be dismissed.
 
 [9]
 

 DISMISSAL OF PENDENT STATE LAW CLAIMS PURSUANT TO 28 U.S.C. § 1367(a) OR (c)
 

 The defendants have moved the Court to dismiss the pendent state law claims arguing that the Court does not have supplemental jurisdiction over those claims because they are not “so related to [the claim] in the action within [the Court’s] original jurisdiction that they form part of the same case or controversy” as required by § 1367(a). The defendants are mistaken.
 

 Supplemental jurisdiction exists where “the federal-law claims and state-law claims in the ease ‘derive from a common nucleus of operative fact’ and are ‘such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding.’”
 
 Kansas Public Emp. Ret. System v. Reimer & Koger,
 
 77 F.3d 1063, 1067 (8th Cir.1996). Many federal courts have held that “[a] loose factual connection between the claims has been held enough to satisfy [these two] requirements.” 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure,
 
 § 3567.1 (1984).
 

 In this ease, the intentional infliction of emotional distress claim and the Title VII sexual harassment and retaliatory discharge claims against the corporate defendants are sufficiently factually connected for supplemental jurisdiction to exist. The allegations which form the basis of the sex discrimination claim also form the basis of the intentional infliction of emotional distress claim. All of the claims derive from a common nucleus of operative fact and are such that the plaintiff would ordinarily be expected to try them together. Therefore, the claims against the corporate defendants form part of the same case or controversy as required by § 1367(a).
 

 Further, the Court also has supplemental jurisdiction over the state claims against O’Leary. In
 
 Miller v. Brungardt,
 
 916 F.Supp. 1096 (D.Kan.1996), the plaintiff sued the school district and two individuals
 
 *1441
 
 alleging intentional infliction of emotional distress as well as sexual harassment and retaliatory discharge in -violation of Title VII and state law. After dismissing the sexual harassment and retaliatory discharge claims against the individuals finding individual capacity suits to be inappropriate, the court found that “[t]he state law claims against [the individual defendants] are so related to those asserted against [the school district], over which there is no question of the court’s jurisdiction, that they form part of the same case or controversy.”
 
 Miller,
 
 916 F.Supp. at 1098-99. Therefore, supplemental jurisdiction existed. Likewise, supplemental jurisdiction exists in this case. The intentional infliction of emotional distress claim against O’Leary is so related to the claims asserted against the corporate defendants that they form part of the same ease or controversy. All of the claims derive from a common nucleus of operative fact, and further, they are claims that the plaintiff would ordinarily be expected to try together. It does not matter that there are no federal claims pending against O’Leary because “[a]s long as one of the parties to the suit has federal claims pending against it, the court has mandatory supplemental jurisdiction over all claims and parties related.”
 
 Gudenkauf v. Stauffer Communications, Inc.,
 
 896 F.Supp. 1082, 1084 (D.Kan.1995).
 

 Thus, under § 1367(a), the Court is required to accept supplemental jurisdiction because the statute commands “the district courts
 
 shall
 
 have supplemental jurisdiction.”
 
 McLaurin v. Prater,
 
 30 F.3d 982, 984 (8th Cir.1994) citing 28 U.S.C. § 1367(a). However, this mandatory exercise of supplemental jurisdiction is not without exceptions.
 
 Southern Council of Industrial Workers v. Ford,
 
 83 F.3d 966, 969 (8th Cir.1996).
 

 There are four exceptions set forth in § 1367(c).
 
 [10]
 
 The defendants argue that the second exception applies in this case — that the state claim of intentional infliction of emotional distress will predominate the Title VII claims. They base their argument on the additional proof necessary to establish the state claim. In addition, the defendants argue that the state claim will unduly broaden the scope of the trial and confuse the jury because of the conflicting instructions regarding the different standards of proof.
 
 [11]
 
 The Court is not persuaded.
 

 The Court’s decision rests on the language of the statute itself. Subsection (c)(2) permits the Court to decline to exercise supplemental jurisdiction only if the state claim
 
 substantially
 
 predominates over the federal claim. In this case, it does not.
 

 Moreover, even assuming the state claim did substantially predominate, subsection (c) leaves the decision whether to exercise supplemental jurisdiction within the Court’s discretion. Using that discretion, the Court will exercise supplemental jurisdiction in this case. The state and federal claims are sufficiently interrelated, and Karstens should not be forced to sue in two different courts. If two trials were required, Karstens and O’Leary would likely be called as witnesses at both trials to testify about the Minnesota trip. Considerations of judicial economy and preservation of resources weigh against such duplicative litigation.
 
 Bridges v. Eastman Kodak Co.,
 
 800 F.Supp. 1172, 1179 (S.D.N.Y. 1992).
 

 In addition, the Court is not persuaded that the different instructions required for the different claims will create jury confusion sufficient to justify declining to exercise supplemental jurisdiction. “Juries are instructed regularly on different theories of relief, even when only federal claims are present. The mere existence of one difference in legal theory does not create a sufficient likelihood of jury confusion to justify dismissing plain
 
 *1442
 
 tiffs [state] claims.”
 
 Bridges,
 
 800 F.Supp. at 1179.
 

 For the foregoing reasons, the defendants’ motions are denied, and the Court will exercise supplemental jurisdiction over the related state law claims.
 

 INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 

 Defendants Gamco and Infinational have moved the Court to dismiss the plaintiffs claim of intentional infliction of emotional distress pursuant to Fed.R.Civ.P. 12(b)(6) for failure to allege facts sufficient to state a cause of action against them.
 
 [12]
 

 In her complaint, the plaintiff alleges:
 

 On or about February 8, 1993, Plaintiff was instructed by her supervisor Scott Henneman to travel to Minnesota under the direction and control of salesperson, John O’Leary. During said business trip, while plaintiff and John O’Leary were in the scope and course of their duties, Plaintiff was subjected to repeated offensive sexual comments, language, touching, and lewd behavior by defendant John O’Leary. Plaintiff objected to said conduct, voicing her objections immediately to the Defendant O’Leary, and subsequently to other members of the management of Infinational and Gamco, but no action was taken to remedy the situation.
 

 Complaint ¶ IV. Karstens further alleges:
 

 The actions of the Defendants described above were intentional and were so outrageous and so extreme that the conduct goes beyond all possible bounds of decency, and is and was regarded as atrocious and utterly intolerable in the community, and said conduct caused severe emotional distress which no reasonable person should be expected to endure.
 

 Complaint ¶ XIV.
 

 Under Nebraska law, a plaintiff must prove the following elements to make out a claim for intentional infliction of emotional distress: (1) intentional or reckless conduct; (2) so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community; (3) that caused emotional distress so severe that no reasonable person should be expected to endure it.
 
 Schieffer v. Catholic Archdiocese of Omaha,
 
 244 Neb. 715, 718, 508 N.W.2d 907, 910 (1993).
 

 Liability of the corporate defendants can be asserted either directly or derivatively. Direct liability rests upon whether the corporations committed the tort. As noted above, “[l]iability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.”
 
 Davis v. Texaco, Inc.,
 
 210 Neb. 67, 70, 313 N.W.2d 221, 223 (1981). “The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities____ There is no occasion for the law to intervene in every case where some one’s feelings are hurt.”
 
 Id. citing
 
 Restatement 2d of Torts § 46, comment (d). Even when accepting all well-pled allegations as true and viewing them in a light most favorable to the plaintiff, the corporate conduct alleged by Karstens, specifically, the lack of response to her complaints and her subsequent termination, would not constitute extreme and outrageous conduct under Nebraska law. Therefore, the Court cannot impose liability on the corporate defendants under a direct liability theory.
 

 In contrast, a derivative liability theory rests on principles of respondeat superior wherein the corporation can be held liable for the acts of its employee. In order to recover under the doctrine of respondeat superior in Nebraska, “a plaintiff must demonstrate that, at the time of the alleged tort, a master and servant relationship existed and that the servant was acting within the scope of his employment.”
 
 Jones v. Baisch,
 
 40 F.3d 252, 254 (8th Cir.1994). The conduct of a servant is within the scope of his employment if it is of the kind he is employed to perform, it occurred substantially within the
 
 *1443
 
 authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master.
 
 Id. citing Strong v. K & K Invs.,
 
 216 Neb. 370, 343 N.W.2d 912, 915-16 (1984). “The master is liable for the acts of his servant within the general scope of his employment while about his master’s business, though the act be negligent, wanton, willful or malicious.”
 
 Sternad v. Omaha & Council Bluffs St. Ry. Co.,
 
 104 Neb. 460, 464, 177 N.W. 738, 739 (1920)
 
 citing Chicago, R.I. & P.R. Co. v. Kerr,
 
 74 Neb. 1, 104 N.W. 49 (1905). Whether the servant was acting within the scope of his employment is generally a question of fact for a jury.
 
 Id.
 

 The plaintiff alleges that a master and servant relationship existed between O’Leary and the corporate defendants. Complaint ¶ I. The plaintiff also alleges that O’Leary’s offensive conduct took place while O’Leary was acting within the scope of his employment. Complaint ¶ TV. Accepting these allegations as true, the Complaint states a valid claim for relief under a derivative liability theory.
 
 See, e.g., Vernon v. Medical Management Associates of Margate,
 
 912 F.Supp. 1549, 1560-61 (S.D.Fla.1996) (sex discrimination plaintiffs allegation that employee “was acting within the [course] and scope of his employment” when intentionally inflicting emotional distress, when accepted as true, was sufficient for the limited purpose of withstanding a 12(b)(6) motion). Therefore, the corporate defendants’ motion to dismiss will be denied.
 

 For the reasons stated above, the defendants’ motions are granted in part and denied in part. A separate order will be entered in accordance with this memorandum opinion.
 

 [1]
 

 . The plaintiff alleges that she was concurrently employed by Infinational and International Gamco, Inc. (Gamco) because the two are a "common employer” as defined in 42 U.S.C. § 2000e
 
 et seq.
 

 [2]
 

 . O'Leary also worked for Infinational under the plaintiff's common employer theory.
 

 [3]
 

 . There is no allegation number “3.” The break in numbering appears between page one and two of the Charge of Discrimination.
 

 [4]
 

 . The Affidavit of April Karstens submitted in opposition to the defendants’ motions states in part that during the week prior to August 31, 1993, she met with intake personnel at the Omaha Human Relations Department and:
 

 4. At that time, I described in detail to the intake personnel the facts which form the basis of my claim.
 

 5. I not only complained of my retaliatory discharge, but I also complained in detail about the sexual harassment that I had suffered while working under the direct supervision of John O'Leary.
 

 6. I told the intake personnel that Mr. O’Leary had sexually harassed me, that I was directed to report to him and work under his supervision during my trip to Minnesota on February 8, 1993. I described the facts of the sexual harassment in detail. Those facts included those I have identified in paragraph 4 of my Complaint, including the specifics of the offensive sexual comments he made, the language, the touching and lewd behavior by John O'Leary, including dropping his pants in front of me.
 

 7. I asked that the defendants be charged with sexual harassment and retaliation____
 

 [5]
 

 . There is evidence indicating that the EEOC did investigate the sexual harassment claim. Karstens' Affidavit states:
 

 9. During the course of the investigation, the agency requested information regarding the incident of sexual harassment and I provided that information to them.
 

 This itself creates a strong inference that such a claim was presented.
 
 Hargens
 
 at 1326.
 

 [6]
 

 . Defendant O’Leary’s reply brief at 1.
 

 [7]
 

 . Defendant O’Leary’s reply brief at 2.
 

 [8]
 

 . Additional legislative history elaborates on this stated purpose as follows:
 

 SENATOR CHAMBERS: [T|here is an equal opportunity commission which enforces certain rights ... by offering a tedious, slow and cumbersome method of trying to resolve a grievance. The backlog they have now might require you to wait 18 months to [2 years] before you arrive at a resolution and the resolution of the problem is not definitive. You have to go through a ... reconciliation, discussion, persuasion, and if that does not work then you can have a formal hearing ... Well, either side can disagree, then you go to court. This bill would make it possible if you have a grievance to go into court, initially----
 

 SENATOR BARNETT: Senator Chambers, how come we need a law for this? Why can't we do that right now?
 

 SENATOR CHAMBERS: Because in some instances if you go into court on certain matters, you are told to exhaust the remedies, administrative remedies, first.
 

 SENATOR BARNETT: And it is your feeling that [this bill] would eliminate the run around of settling these actions that you get now out of the court[?]
 

 SENATOR CHAMBERS: Right ... If it does go into court, then I present all that I have on which I base the claim and then you oppose it and the court makes a decision ... But through the [NEOC] system you can go on for up to two years [or] longer and after all of that is completed you then might go into court anyway and start all over. By that time evidence can be old, witnesses can be gone or dead, and it becomes in a lot of cases, a paper victory, if you win it.
 

 Goolsby v. Anderson,
 
 250 Neb. 306, 311-12, 549 N.W.2d 153, 157 (1996)
 
 citing
 
 Judiciary Committee Hearing, L.B. 66, 86th Leg., 1st Sess. (Jan. 18, 1977).
 

 [9]
 

 . Based on the foregoing discussion, it becomes apparent that the plaintiff’s Title VII and § 20-148 claims against the corporate defendants are duplicative. The plaintiff cannot recover anything different under the state statute than she can under the federal statute. However, this issue has not been presented in defendants’ motion.
 

 [10]
 

 . That subsection provides:
 

 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
 

 (1) the claim raises a novel or complex issue of State law,
 

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 

 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 

 [11]
 

 . O'Leaiy’s brief at 9; Gamco and Infinational’s brief at 6.
 

 [12]
 

 . The brief of the corporate defendants fails to elaborate on this position.